**Opinion issued April 21, 2016**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-15-00930-CV

————————————

## HARRIS COUNTY, TEXAS, Appellant

## V.

## STEPHANIE JO BAKER, Appellee

---

**On Appeal from the 295th District Court**
**Harris County, Texas**
**Trial Court Case No. 2014-02549**

---

## MEMORANDUM OPINION

Stephanie Jo Baker has sued Harris County for negligence based on personal injuries she allegedly sustained during her post-arrest booking at the Harris County jail. Harris County filed a plea to the jurisdiction, asserting that Baker's claims should be dismissed because they are barred by governmental immunity. The trial

court denied the plea, and Harris County filed this interlocutory appeal. The county presents two issues, challenging the trial court's denial of its plea to the jurisdiction.

We reverse the trial court's order denying Harris County's plea to the jurisdiction and render judgment dismissing Baker's claims.

## Background

On January 24, 2012, a deputy with the Harris County Sheriff's Office arrested Stephanie Jo Baker for the offense of possession of a controlled substance. Baker was handcuffed and transported to the Harris County jail for booking. Baker and the Harris County Sherriff's Office would offer divergent versions of what occurred during Baker's arrest and booking.

A report, entitled Significant Event Bulletin, was prepared by the sheriff's office. The bulletin provided a description of what had occurred at the booking center. It stated that the deputies had difficulty fingerprinting Baker because she was intoxicated. The bulletin noted that Baker had difficulty standing; she was swaying from side to side. After she was finger printed, the deputies handcuffed Baker with her hands in front of her, rather than behind her, "because she had trouble balancing herself."

When a deputy informed her that she would have to wait a few minutes to be taken to a restroom, Baker stood up from where she was seated and began cursing

at the deputies in the booking room.  A deputy sat Baker down, but she stood up again, continuing to curse at the deputies.  A deputy sat Baker down a second time, but Baker got up a third time, continuing to swear at the deputies.  Fearing that Baker might assault him, "[The deputy] raised his arm in an attempt to stop her and to maintain distance from him.  Due to her intoxicated state[,] [Baker] lost balance and fell down on her left side between the concrete benches."

When one of the deputies attempted to stand her up, Baker tried to bite him.  The deputies were successful in sitting Baker on the bench, but she continued to curse at the deputies.  The report reflects that Baker was seen by a jail nurse for a bump on the side of her forehead.

On January 21, 2014, Baker sued Harris County for personal injuries allegedly sustained during her arrest and booking.  Baker claimed that the county's immunity from suit was waived because her claims fell within a limited waiver of governmental immunity, provided in the Texas Tort Claims Act section 101.021(2), for injuries caused by a government employee's negligent use of tangible personal property.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2) (Vernon 2011).  Baker averred that her injuries were caused by the deputy's negligent use of property, specifically, the handcuffs during her arrest, and by the

deputies' use of the handcuffs, concrete benches, "and other tangible personal property in the booking area" during her booking at the jail.[1]

In her original petition, Baker made the following factual allegations:

> When being placed under arrest, the deputy placed Plaintiff in handcuffs in a negligent manner where the hand cuffs were negligently placed around [Baker's] wrist. As [Baker] complained of the tightness of the hand cuffs, the deputy began to violently pull down on the hand cuffs and strike [Baker] in the back with his knees. This caused severe injuries to both [Baker's] back and wrists. Moreover, the deputy violently slammed [Baker] to the ground and verbally threatened that not only would he kill her, but nobody would care. She would just be another dead crack head although she was not found to be in possession of any other substance but a prescription medication.
>
> After arriving at the police station, the violence continued. Still using the hand cuffs for leverage, the deputy slammed Plaintiff repeatedly into several pieces of furniture at and/or around the booking area of the police station including a concrete bench. [Baker] sustained injuries to her head and visual apparatuses.

Baker gave her deposition on June 25, 2014. She testified that, during her arrest, the deputy had twisted her hands behind her back and squeezed the handcuffs so tightly that he fractured her wrist. Baker stated that the deputy had intentionally slammed her to the ground, breaking her teeth.

Baker testified that the deputy "did the same things" at the jail during the booking process. Baker stated that it was the deputy who had hit her head on the concrete bench at the jail. Baker elaborated in the following testimony:

---

[1] Baker alleged that Harris County was liable for the deputies' actions based on the doctrine of respondeat superior.

4

Q. Is it your testimony that he intentionally threw you into the benches, slammed you into the concrete bench?

A. Yes, he was very angry and aggressive and hateful. So, yeah, I'm sure he meant to do it.

Q. So, again, it wasn't that one of you stumbled or whatever. You're saying that he—

A. Absolutely.

Q. He intended for it to happen?

A. Yes, sir.

On December 22, 2104, Harris County filed a plea to the jurisdiction. Harris County asserted that it retained immunity under the intentional-tort exception to the Tort Claims Act's governmental-immunity waiver. Section 101.057(2) of the Act specifically excludes waiver for a claim "arising out of assault, battery, false imprisonment, or any other intentional tort . . . ." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.057(2) (Vernon 2011). Harris County argued that its immunity had not been waived because Baker claimed her alleged injuries were caused by the deputy's intentional use of excessive force. The county asserted that Baker had not alleged that her injuries were caused by the negligent use of tangible personal property.

Harris County cited *City of Watauga v. Gordon* in which the Supreme Court of Texas held that a claim involving a police officer's use of excessive force— specifically the use of overly tight handcuffs—to effectuate a lawful arrest was a

claim arising out of civil battery rather than out of negligence. 434 S.W.3d 586, 593 (Tex. 2014). Citing section 101.057(2), the *Gordon* court concluded, "The Texas Tort Claims Act waives governmental immunity for certain negligent conduct, but it does not waive immunity for claims arising out of intentional torts, such as battery." *Id.* at 594. Harris County argued that, as in *Gordon*, its immunity had not been waived because Baker's claim that she was injured by the deputy's use of excessive force arose from allegations of civil battery, an intentional tort for which immunity is not waived.

Baker filed a response to the county's plea to the jurisdiction. Minimizing her previous claim that she had been injured by the deputy's intentional battery of her, Baker asserted that the injuries she had sustained during booking, when she fell and hit the concrete bench, had been unintended and had resulted from purely negligent conduct. Relying on the Significant Event Bulletin to support her response to Harris County's plea, Baker asserted,

> It is clear from the evidence now in [Baker's] possession that the injuries sustained were the result of the negligent acts of [Harris County's] employees. . . . The Significant Event Bulletin clearly states that the fall sustained by [Baker] which caused her injuries arise from the officer raising his hand without intent to make contact, but merely to gain some distance. Furthermore, [the report] proves that the injuries sustained were from the negligent use of the restraints and placement of the booking room while [Baker] was intoxicated.

Three days after filing her response, Baker amended her petition. She again alleged Harris County's immunity was waived pursuant to Tort Claims Act section

6

101.021(2) because it had caused her injuries "by the negligent use and/or condition of tangible personal property," specifically, "the handcuffs, booking area, concrete benches and other tangible personal property in the booking area." Baker deleted most of her earlier allegations that the deputy had used excessive force when arresting her. Baker did maintain that, in effecting her arrest, the deputy had "pulled down on the handcuffs," causing her severe injuries to her back and to her wrists. However, the primary focus of Baker's negligence claims in her amended petition was as follows:

> While in the booking room of the Harris County Sheriff's Department, [Baker] was left restrained and placed on a bench. Employees of the Harris County Sheriff's Department were aware that [Baker] was intoxicated but left the restraints on her hands and failed to fully restrain her so that she could not stand up. After being told to sit down once, [Baker] stood up and approached an officer. The officer put his hand up to form distance between himself and [Baker]. [Baker] then fell and received injuries due to property located in the booking room and/or the restraints that were being improperly used.

After Baker amended her petition, Harris County supplemented its plea to the jurisdiction. Harris County averred, "The amendment of [Baker's] Petition . . . carefully deleted all references to violence and slamming and assault by the deputies[,] but the amended pleading does not delete or diminish the actual sworn testimony of Plaintiff Stefanie Jo Baker herself" in which she described the deputy's intentional and violent conduct that caused her alleged injuries.

7

Before amending her petition, Baker had responded to written discovery requests. In its supplement, Harris County pointed to Baker's interrogatory answers in which she described, as she had in her deposition testimony, the deputy's intentional and violent conduct during her arrest and booking, which she claimed caused her injuries. Harris County maintained that its immunity from suit was not waived because, as described in her sworn statements, Baker's claims arose from intentional tortious conduct, not from negligent conduct.

Harris County further asserted that its immunity was not waived under the "condition or use of tangible property" provision of the Tort Claims Act because neither the condition nor the use of tangible personal property in this case had proximately caused Baker's injuries. Baker had cited the handcuffs, the concrete bench, and the booking room itself as being the tangible property used by the deputy to cause her injury. Harris County averred that the tangible property mentioned by Baker did not cause her alleged injuries but, at most, provided a condition that made her injuries possible.

The trial court denied Harris County's plea to the jurisdiction. This interlocutory appeal followed. On appeal, the county raises two issues challenging the trial court's denial of its plea.

**Plea to the Jurisdiction**

**A.    Standard of Review**

Whether subject-matter jurisdiction exists is a question of law that can be challenged, as it was here, by a plea to the jurisdiction. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000).  We review de novo the disposition of Harris County's jurisdictional plea. *Tex. Dept. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).  Because we address a plea to the jurisdiction in which disputed evidence implicates both the court's subject-matter jurisdiction and the merits of the case, we consider relevant evidence submitted by the parties to determine if a fact issue exists. *Id.* at 227.  We take as true all evidence favorable to the non-movant, indulge every reasonable inference, and resolve any doubts in the non-movant's favor. *Id.* at 228.  If the evidence creates a fact question regarding jurisdiction, the plea must be denied pending resolution of the fact issue by the fact finder. *Id.* at 227–28.  If the evidence fails to raise a question of fact, however, the plea to the jurisdiction must be granted as a matter of law. *Id.* at 228.

**B.    Waiver of Governmental Immunity**

Without a valid statutory or constitutional waiver, a trial court lacks subject-matter jurisdiction to adjudicate a lawsuit against a political subdivision, such as Harris County. *See Suarez v. City of Tex. City*, 465 S.W.3d 623, 631 (Tex. 2015); *Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 836–37

(Tex. 2010). The Tort Claims Act waives a governmental unit's immunity from suit but only "to the extent of liability created by [the Act]." TEX. CIV. PRAC. & REM. CODE ANN. § 101.025(a) (Vernon 2011). Relevant to this case, the Tort Claims Act provides that a governmental unit is liable—and thus immunity is waived—for "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." *Id.* § 101.021(2) (Vernon 2011). The immunity waiver is therefore intertwined with the merits of a claim under the Tort Claims Act. *Suarez*, 465 S.W.3d at 632.

## C. Arrest-Based Claims

In its first issue, Harris County contends that it has retained its immunity from Baker's claim that she was injured by the deputy's use of excessive force in effecting her arrest. Although she had deleted most of her excessive-use-of-force allegations made in her original petition, Baker alleged in her amended petition that she was injured during her arrest when the deputy "pulled down on the handcuffs." Harris County correctly points out that the Tort Claims Act specifically states that any waiver of immunity provided for in the Act does not apply to claims arising out of intentional torts. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.057(2). Harris County also correctly points out that the Supreme Court of Texas held in *Gordon* that a claim of excessive force by a police officer in

effecting a lawful arrest is a claim for battery, an intentional tort. 434 S.W.3d at 593. As a result, a governmental unit's immunity is not waived under the Tort Claims Act when a plaintiff claims that she was injured by a police officer's use of excessive force in effecting a lawful arrest. *See id.* at 594.

In her responsive appellate brief, Baker states that she "has abandoned her claims regarding injuries that may have been received due to the initial handcuffing and arrest prior to arrival at the police station." Baker further states that she "agrees that the Texas Supreme Court, through its decision in *City of Watauga v. Gordon*, has ruled that any injuries sustained during the initial handcuffing and/or arrest of a suspect arise from an intentional touching therefore making the conduct an intentional tort." Thus, because Baker acknowledges that Harris County has not waived its immunity to her claims that that the deputy used excessive force in effecting her arrest, and she has abandoned those claims, we dismiss Harris County's first issue as moot.

## C. Booking-Room Claims

Although she has abandoned her arrest-based claims of excessive force, Baker maintains that Harris County's immunity is waived because she has stated a Section 101.021(2) claim for negligent use of tangible personal property with respect to the injuries she sustained in the booking room. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2). In its second issue, Harris County argues that it

11

retains its immunity from these claims because the injuries sustained by Baker in the booking room were not caused by the county's use of tangible personal property, as required under Section 101.021(2). *See id.*

### 1. Legal Principles

"Section 101.021(2) requires that for immunity to be waived, personal injury or death must be proximately caused by the condition or use of tangible property." *Dallas Cnty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex. 1998). "Use" means "to put or bring into action or service; to employ for or apply to a given purpose." *Tex. Nat. Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 869 (Tex. 2001). Proximate cause consists of cause-in-fact and foreseeability. *City of Sugar Land v. Ballard*, 174 S.W.3d 259, 266 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (citing *Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex. 1996)). The test for foreseeability is whether a person of ordinary intelligence would have anticipated the danger that his negligence created. *Id.* at 267.

An act or omission is a cause-in-fact of the injury if it is a substantial factor in causing the injury without which the injury would have not occurred. *Id.* (citing *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995)). To establish cause in fact, or "but for" causation, a party must show that the defendant's negligence was a substantial factor in bringing about her injury and

was a factor without which no harm would have been incurred. *Id.* (citing *Excel Corp. v. Apodaca*, 81 S.W.3d 817, 820 (Tex. 2002). "The word substantial is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility." *Id.* (quoting *Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 776 (Tex. 1995). This is in contrast to the "so-called philosophic sense, which includes every one of the great number of events without which any happening would not have occurred." *Id.*

The Supreme Court of Texas has cautioned that the Section 101.021(2) waiver requires more than the property's mere involvement. *Bossley*, 968 S.W.2d at 343. The court made clear that property does not cause injury if it does no more than furnish the condition making the injury possible. *Id.* Proximate cause instead requires some nexus between the use of the property and the plaintiff's injury. *Id.* at 342–43; *see also Dallas Cnty. v. Posey*, 290 S.W.3d 869, 872 (Tex. 2009). For the property waiver to apply, the use of the property must actually have caused the injury. *Posey*, 290 S.W.3d at 872.

### 2. Analysis

In her amended petition, Baker relies on the following allegations to support her negligence claim based on the county's alleged negligent use of tangible personal property:

13

> While in the booking room of the Harris County Sheriff's Department, [Baker] was left restrained and placed on a bench. Employees of the Harris County Sheriff's Department were aware that [Baker] was intoxicated but left the restraints on her hands and failed to fully restrain her so that she could not stand up. After being told to sit down once, [Baker] stood up and approached an officer. The officer put his hand up to form distance between himself and [Baker]. [Baker] then fell and received injuries due to property located in the booking room and/or the restraints that were being improperly used.

Baker alleges her injuries in the booking room were proximately caused by the deputies' negligent use of the handcuffs, the concrete bench, and other unspecified "furnishings located in the booking room." In support of its plea to the jurisdiction, Harris County offered Baker's deposition testimony and her discovery responses in which Baker stated under oath that her injuries in the booking room were caused by the deputy's intentional use of excessive force; that is, they were caused by an intentional tort, battery, for which the county retains immunity under the Tort Claims Act.

With respect to the injuries she sustained in the jail booking room, Baker testified as follows in her deposition:

> [T]hen I went to the jail, and he booked me in there. And then [the deputy] did the same thing there, and I hit my head on—I think—like I said, I'm pretty sure I hit my head on the cement benches. *It was not I hit my head. [The deputy] hit my head, you know, when he jerked me.*

(Emphasis added.)

14

Later in her deposition, the following exchange occurred regarding the injuries she sustained in the booking room:

> Q. [I]s is it your testimony that [the deputy] threw you into the benches, slammed you into the concrete bench?
>
> A. Yes, he was very angry and aggressive and hateful. So, yeah, I'm sure he meant to do it.
>
> Q. So, again, *it wasn't that one of you stumbled* or whatever. You're saying that he—or whatever. You're saying that he—
>
> A. Absolutely.
>
> Q. He intended for it to happen?
>
> A. Yes, sir.

(Emphasis added.)

In its discovery request, Harris County asked Baker "[to] describe how you claim the deputy used tangible personal property to cause you injury at the Harris County Jail." In her sworn answer, Baker responded as follows:

> To the best of my knowledge I was slammed on the concrete benches, still using the handcuffs, head first causing my teeth to basically shatter. It is my belief that other objects such as tables could have been used to cause my injuries as well. At this time, I had already been knocked unconscious previously.

On appeal, Baker claims that she testified in her deposition that, due to her injuries, she did not have a clear memory of the events that occurred during her arrest and detention at the jail. She points to the following exchange during her deposition:

15

Q. And that issue of two days before to about three days after you were in the jail, has there been any time since January 2012 that you've had a clear memory of those details or has that been—

A. No. It's always—just been gone. It's just like erased or whatever.

Baker now claims on appeal that "given [her] admission that she cannot remember the events that unfolded and the nature of the injuries she sustained to her head, the accuracy of [Baker's] account of the story must be completely called into question." We note that Baker's deposition testimony preceding the cited exchange was not included in the record. In other words, the testimony is cited out of context. Her current claim on appeal that the cited testimony indicates that she does not remember what happened at the jail does not comport with her sworn testimony, given in the same deposition, in which she stated that the deputy intentionally hit her head on the concrete bench in the booking room.

Baker asserts that the Significant Event Bulletin, prepared by the Harris County Sheriff's Office, "evidenced that the handcuffs and furniture in the booking room were tangible personal property that proximately caused [her] injuries thus waiving sovereign immunity." The bulletin states that Baker was brought to the booking center at the jail by Deputy Waller. Once there, Baker was escorted to a bench to await fingerprinting.

The bulletin states that, when she was called for fingerprinting, "Baker had trouble standing due to intoxication level. She kept swaying from side to side and

16

almost seemed like she was going to fall asleep standing up." The bulletin indicates that Deputy Waller "had trouble fingerprinting [Baker]" and asked Deputy Valdez to assist in the process. After her fingerprints were taken, the deputies placed the handcuffs back on Baker. The bulletin states that "[t]he handcuffs were placed on [Baker] in front instead of behind her because she had trouble balancing herself." Deputy Waller then escorted Baker back to the bench where she sat down.

According to the bulletin, Baker then said that "she needed to use the bathroom to change out her '[feminine] pad.'" Deputy Valdez told Baker that he would escort her to the inmate processing center where she could obtain feminine hygiene products, but she would need to wait a few minutes. After hearing this, Baker stood up and "began cursing Deputy Valdez along with Deputy Waller." Deputy Valdez asked Baker to sit down. Baker refused and called the deputy a "f---ing pig."

Deputy Valdez again asked Baker to sit down, but she still refused. Baker then walked towards another deputy, Deputy Albers, who was completing paperwork. Deputy Albers advised Baker to have a seat, and she said, "F--- you! I have to use the restroom . . . . You f---ing pig." Baker continued to approach Deputy Albers as she made the statement. The deputy escorted her back to her seat. When Deputy Albers turned around, Baker stood up again and began walking

17

toward him. As Baker walked towards Deputy Albers, Deputy Valdez grabbed Baker's arm and sat her down. Baker then cursed at Deputy Valdez stating, "Don't f---ing touch me pig!"

At this point, the event on which Baker now bases her negligent use of property claim is discussed in the bulletin:

> Deputy Valdez attempted to explain to [Baker] that she would be taken across the street momentarily. She cursed him again and stood back up and walked towards him. Since her handcuffs at that time were still in front of her[,] Deputy Valdez was in fear that [Baker] might assault him. Deputy Valdez raised his arm in an attempt to stop her and to maintain distance from him. Due to her intoxicated state[,] [Baker] lost balance and fell down on her left side between the concrete benches.

The bulletin reflects that, after she fell, Baker became combative, attempting to bite and kick the deputies. Baker was ultimately taken to the inmate processing center. She was later seen by nurse at the facility for a bump on her forehead.

Even when we view the bulletin in the light most favorable to Baker, take it as true, and indulge every reasonable inference and doubt in Baker's favor, the bulletin does not show that the deputies' use of any of the tangible personal property cited by Baker—namely, the handcuffs, concrete bench, and other room furnishings—was a substantial factor in causing Baker's injury, without which her injury would have not occurred. In other words, no nexus is established by the bulletin between the deputies' use of the property in the booking room and Baker's injuries.

18

Although the bulletin indicates that Baker was wearing handcuffs when she fell, and that the handcuffs had been placed in front of her due to her balance issues, nothing in the bulletin indicates that the handcuffs played a role in causing her to lose her balance or to fall. The bulletin indicates that, before she fell, Baker had gotten up twice from the bench without falling. Baker fell the third time she got up from the bench. The third time differed from the first and second times in that, the third time she stood up, Deputy Valdez raised his arm to defend himself against her. As described in the bulletin, this action, along with her own decision to stand up a third time, set in motion Baker's fall.

In addition to no mention of the handcuffs with respect to Baker's injury, the bulletin does not indicate that the deputies' use of the concrete bench or any other furnishings in the room was a substantial factor in causing Baker's injuries. Baker asserts on appeal that it was the manner in which the furniture was arranged, which caused her to fall. However, when she was asked in her deposition whether she had stumbled in the booking room, Baker's testimony indicated that she had not. Instead, she confirmed that the deputy had intentionally slammed her into the concrete bench. And the bulletin on which Baker relies does not indicate that the furniture in the room was a factor in causing her to fall.

While the use of concrete bench as described in the bulletin could be said to be involved in Baker's injuries in the philosophical sense, nothing in the bulletin

19

indicates or implies that the deputies' use of the bench or any other furniture in the room caused Baker to lose her balance or to fall. Instead, the bulletin shows that the deputies were using the bench to keep Baker seated. She was injured when she chose to stand up, despite being repeatedly told to remain seated. At most, the deputies' use of the bench in this case could be said to furnish the condition that made Baker's injury possible.[2] *See Bossley*, 968 S.W.2d at 343; *see also Gainesville Mem'l Hosp. v. Tomlinson*, 48 S.W.3d 511, 513 (Tex. App.—Fort Worth 2001, pet. denied) (holding that bed from which patient fell "did no more than furnish the condition that made the injury possible[,] and it did not proximately cause the injury").

Although it does not show that the deputies' use of the handcuffs, the bench, or other furnishings caused Baker's injuries, the bulletin, on which Baker relies, does expressly state a cause of her fall. The bulletin states that Baker lost her balance "[d]ue to her intoxicated state." The bulletin does not otherwise address a

---

[2] Baker relies on *Vela v. City of McAllen* as support for her argument that Harris County's use of the concrete bench proximately caused her injuries. 894 S.W.2d 836 (Tex. App.—Corpus Christi 1995, no writ). There, the court held that the police's use of a booking room and the placement of a stool in the room was "use" of personal property as contemplated by section 102.021(2). *Id.* at 840. However, the issue of whether the use of the property was the cause-in-fact of the plaintiff's injuries was not analyzed in *Vela*. Moreover, *Vela* was decided without the benefit of the supreme court's decision in *Dallas County Mental Health & Mental Retardation v. Bossley*, in which the court made clear that use of property does not cause injury if it does no more than furnish the condition making the injury possible. 968 S.W.2d 339, 343 (Tex. 1998). Thus, *Vela* does not aid us in our review of the instant case.

reason for her fall and, as stated, does not implicate the deputies' use of the handcuffs, the bench or other furniture, either expressly or inferentially, in causing Baker's fall or her injuries. In short, the jurisdictional evidence indicates two possible causes of Baker's booking-room injuries. The evidence offered by Harris County, Baker's sworn statements, indicates that Baker's injuries were caused by the deputies' intentional use of excessive force. Baker's evidence, the bulletin, indicates that Baker's injuries were caused by the deputy's raising of his arm to defend against Baker and, more preeminently, by Baker's own intoxication. No evidence shows that the deputies' use of tangible personal property proximately caused Baker's injuries in the booking room.[3]

Construing the evidence and every reasonable inference in Baker's favor, we conclude there is no evidence from which a reasonable factfinder could conclude

---

[3] Baker also alleged in her amended petition that Harris County was negligent because it failed to restrain her fully so she could not stand up. In her appellate brief, Baker indicates that her injuries were caused because the deputies permitted her to have "free movement" in the booking room. To the extent that Baker implies that that the deputies should have used different or additional restraints to prevent her from standing, the Supreme Court of Texas has held that the "nonuse of property does not suffice to invoke section 101.021(2)'s waiver." *City of N. Richland Hills v. Friend*, 370 S.W.3d 369, 372 (Tex. 2012). To the extent that Baker is basing her claim on the deputies' failure to act to restrain her, "a state entity's failure to act does not invoke the Tort Claims Act's limited waiver of immunity." *Univ. of Tex. Med. Branch v. Qi*, 402 S.W.3d 374, 389–90 (Tex. App.–Houston [14th Dist.] 2013, no pet.); *see Kassen v. Hatley*, 887 S.W.2d 4, 14 (Tex. 1994) (holding that failure to provide medication claim did not allege an injury arising from the "use" of the medication, but stated a claim for non-use of property that did not trigger waiver of sovereign immunity).

that the deputies' use of the handcuffs, concrete bench, and other furnishings in the booking room proximately caused Baker's injuries. [4] Because the evidence fails to raise a genuine and material fact issue concerning whether the use of tangible personal property proximately cause Baker's injuries, Harris County retains immunity from suit, and the trial court lacks jurisdiction over Baker's claims.

We hold that the trial court erred when it denied Harris County's plea to the jurisdiction. We sustain the county's second issue.

---

[4]    In the trial court, Baker also based her claim on the deputies' use of the booking room itself. However, the booking room at the jail would be considered real property, not tangible personal property. *See Nunez v. City of Sansom Park*, 197 S.W.3d 837, 842 (Tex. App.—Fort Worth 2006, no pet.) (holding jail cell to be real property, not personal property); *see also San Antonio Area Found. v. Lang*, 35 S.W.3d 636, 640 (Tex. 2000) (defining real property as "land, and generally whatever is erected or growing upon or affixed to land"). "Neither a cause of action for negligent use of real property nor a cause of action involving a condition of real property exists separate and apart from a cause of action for a premises defect." *Nunez*, 197 S.W.3d at 842. The term "premises" has been defined as a building or part thereof with its grounds and appurtenances. *Id.* "Defect" has been defined as a shortcoming, an imperfection, or the want of something necessary for completeness. *Id.* Here, Baker has not stated a premises defect claim because she has not alleged a defect, shortcoming, or imperfection of the booking room itself. *See id.* To the extent that her claim that the arrangement of the furniture in the booking room caused her injury, the jurisdictional evidence, as discussed, including the Significant Even Bulletin on which Baker relies, does not support this as the proximate cause of her injuries.

**Conclusion**

We reverse the order of the trial court and render judgment dismissing Baker's claims against Harris County.[5]

Laura Carter Higley
Justice

Panel consists of Justices Keyes, Higley, and Brown.

---

[5] Rendition is appropriate because the record reflects that Baker has been given a full and fair opportunity to address the issue of jurisdiction in the trial court, having amended her petition and developed the record. *See Rusk State Hosp. v. Black*, 392 S.W.3d 88, 96 (Tex. 2012).

23