746 So.2d 1237 (1999)
Johnnie Wilmer CLARK, Appellant,
v.
STATE of Florida, Appellee.
No. 98-1960.
District Court of Appeal of Florida, First District.
December 29, 1999.
*1238 Nancy A. Daniels, Public Defender; P. Douglas Brinkmeyer, Assistant Public Defender, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General; Sherri Tolar Rollison, Assistant Attorney General, Tallahassee, for Appellee.
VAN NORTWICK, J.
In this direct criminal appeal, Johnnie Wilmer Clark challenges his convictions for aggravated battery on Cecil Lynn and felony criminal mischief with a motor vehicle which arose out of an incident in which Clark intentionally crashed his vehicle into vehicles occupied by Keith Frost and Cecil Lynn. Appellant argues that the lower court erred in denying his motion for acquittal on each charge because (i) with respect to the aggravated battery charge, ramming the vehicle of Lynn without causing Lynn injury cannot constitute aggravated battery as a matter of law; and (ii) with respect to the criminal mischief charge, the state failed to prove that appellant caused damage to the trucks involved in an amount in excess of $1,000. We affirm the conviction of aggravated battery, because there was sufficient evidence to present a question of fact for the jury. We agree with appellant, however, that, because the state produced no evidence as to the monetary amount of damage to the trucks, the conviction for felony criminal mischief must be reversed. Accordingly, we affirm in part, reverse in part and remand for proceedings consistent with this opinion.

Factual and Procedural Background
Keith Frost, an employee of Northwestern, Inc., a utility contractor, discovered appellant removing construction materials in his truck from a Northwestern storage site. Frost telephoned his supervisor, Cecil *1239 Lynn, for direction. Lynn instructed Frost to have appellant wait so that Lynn could drive to the site and talk with appellant. Lynn then instructed his office to contact the police. Frost was driving a company-owned pickup truck and Lynn was driving his own pickup truck. Frost and Lynn then used their trucks in an attempt to block appellant's exit from the company facility. Lynn testified concerning the events that then transpired:
A.... I had pulled in and started to get out of the truck, and ... was going to go approach [appellant]as the truck was coming toward us, I was going to approach him and talk to him and see what was going on, but to my surprise they started speeding up, coming at me. So I got back in the truck for protection.
* * *
Q. What happened once you got back into your truck?
A. Well, when I got back in the truck, I looked and he was coming at us probably 25 to 30 miles an hour and wasn't letting up. And I said oh, Lord, here we go. He hit the right rear of the truck on a pretty fair angle and spun me.
Q. The right rear of your truck?
A. Yes, tore the bumper off. Keith Frost started chasing him to get him to pull over. At that point I turned around and got into the chase and called the office a second time. And by then I was pretty well upset and kind of scared.
As Lynn and Frost continued to maneuver to block appellant's exit, appellant crashed his truck into the side of Frost's truck and then backed his truck into the front of Lynn's vehicle, damaging its grille, radiator, and bumper. Neither Lynn nor Frost sustained injury. At trial, no evidence was introduced concerning the cost to repair the damage to the trucks, although Frost and Lynn testified about the damage caused to their trucks and photographs of the damage were introduced into evidence. Appellant's motions for acquittal on the aggravated battery and felony criminal mischief charges were denied. As relevant here, the jury found appellant guilty of aggravated battery on Lynn, not guilty of aggravated battery on Frost, and guilty of felony criminal mischief.

Aggravated Battery
Appellant contends that the trial court erred in denying his motion for acquittal on the aggravated battery charge, arguing that the incident involved no touching or striking of the person of either Lynn or Frost and that, under Williamson v. State, 510 So.2d 335 (Fla. 4th DCA 1987), disapproved on other grounds, State v. Sanborn, 533 So.2d 1169 (Fla.1988), the victim's truck could not be considered an extension of their persons. We do not agree.
"Aggravated battery" occurs when a person commits battery either causing great bodily harm, permanent disability or permanent disfigurement or using a deadly weapon. See § 784.045(1)(a), Fla. Stat. (1997). "Battery" occurs when a person either "actually and intentionally touches or strikes" another person against that person's will or intentionally causes bodily harm or injury to another person. See § 784.03(1)(a), Fla. Stat. (1997). As the trial court recognized below, in the instant case there is no evidence of bodily harm, injury, disability, or disfigurement of either Lynn or Frost. In addition, there is no dispute that the appellant's truck can constitute a "deadly weapon." See Williamson v. State, 92 Fla. 980, 111 So. 124 (1926). Thus, the issue is whether the instant case involved a touching of the victim's person under section 784.03(1)(a) so as to constitute a battery.
As this court has held, under the battery statute the degree of injury caused by an intentional touching is not relevant and "any intentional touching of another person against such person's will is technically a criminal battery." D.C. v. State, 436 So.2d 203, 206 (Fla. 1st DCA 1983). Further, under section 784.03(1)(a) "there *1240 need not be an actual touching of the victim's person in order for a battery to occur, but only a touching of something intimately connected with the victim's body." Malczewski v. State, 444 So.2d 1096, 1099 (Fla. 2d DCA 1984)(stabbing money bag held by victim sufficient to constitute battery). Thus, "the word `person' in our state's battery statute ... means person or anything intimately connected with the person." Id.
In Williamson, 510 So.2d 335 (Fla. 4th DCA 1987), cited as authority by appellant, the defendant had crashed his car into the side of a car occupied by a state trooper. Williamson, 510 So.2d at 336. The Williamson court held that as a matter of law the striking of the trooper's car could not constitute the touching or striking of an object intimately connected with the victim's person so as to result in a battery. As the court explained:
The touching or striking in the present case was to the outer body of an automobile which Trooper Thomas was driving, with no direct impact upon or even injury to the trooper. In fact, the evidence shows that the trooper was not even jostled about in the car as a result of the impact. We conclude that as a matter of law the automobile in this case did not have such an intimate connection with the person of the trooper so as to conclude that a battery had occurred.
Id. at 338.
We do not agree with the Williamson court that, as a matter of law, a motor vehicle cannot have such a sufficiently close connection with its occupant that intentionally striking the vehicle may never constitute a battery on the person of the occupant. The Restatement of Torts explains the nature of the considerations in determining whether an object should be regarded as part of the person for battery purposes, as follows:
Since the essence of the plaintiffs grievance consists in the offense to the dignity involved in the unpermitted and intentional invasion of the inviolability of his person and not in any physical harm done to his body, it is not necessary that the plaintiff's actual body be disturbed. Unpermitted and intentional contacts with anything so connected with the body as to be customarily regarded as part of the other's person and therefore as partaking of its inviolability is actionable as an offensive contact with his person. There are some things such as clothing or a cane or, indeed, anything directly grasped by the hand which are so intimately connected with one's body as to be universally regarded as part of the person. On the other hand, there may be things which are attached to one's body with a connection so slight that they are not so regarded. The line of distinction is very difficult to draw. It is a thing which is felt rather than one to be defined, since it depends upon an emotional reaction. Thus, the ordinary man might well regard a horse upon which he is riding as part of his personality but, a passenger in a public omnibus or other conveyance would clearly not be entitled so to regard the vehicle merely because he was seated in it.
Restatement (2d) of Torts, § 18, cmt. c. (1965).
Thus, just as the question of whether an object can be considered a "deadly weapon," see Morris v. State, 722 So.2d 849, 850 (Fla. 1st DCA 1998), whether an object is sufficiently closely connected to a person such that touching or striking the object would be a battery on that person will depend upon the circumstances of each case. As a result, generally it is a question of fact for the jury.
In the instant case, appellant twice drove his truck into Lynn's vehicle, once spinning Lynn around and causing damage to the front and back end of Lynn's truck. Although not injured, there is no doubt that Lynn was more than "jostled," or that a reasonable jury could find, in the language of the Restatement, that he suffered an "unpermitted and intentional invasion *1241 of the inviolability of his person." We find persuasive the reasoning of the Supreme Court of Idaho which stated, when considering this same issue, that
[i]ndeed, we have little difficulty in concluding that intentionally striking a car with a pickup truck, when both vehicles are being operated at 35 miles per hour, would generate whatever physical disturbance may be implicitly required by the statute.
State v. Townsend, 124 Idaho 881, 886, 865 P.2d 972, 977 (1993); see also Espinoza v. Thomas, 189 Mich.App. 110, 472 N.W.2d 16, 21 (1990)(attack on plaintiff's car by striking workers could establish claim for assault and battery). We conclude, therefore, that the trial court correctly submitted the aggravated battery charges to the jury. Pursuant to Article V, section 3(b)(4) of the Florida Constitution, we certify conflict with Williamson.

Criminal Mischief
The offense of criminal mischief is established by the proof of willful or malicious damage to the property of another. See § 806.13(1)(a), Fla. Stat. (1997). If the damage to the property is $1,000 or greater, the offense is a third degree felony, see section 806.13(1)(b)3, Florida Statutes (1997). "[T]he value of the property damage is relevant only to the severity of the crime." Valdes v. State, 510 So.2d 631, 632 (Fla. 3d DCA 1987).
In the instant case, although the state did produce evidence as to the extent of physical damage to Lynn's vehicle and the repair required, no evidence of the monetary value of the damage or cost of repair was introduced. We recognize that in theft cases, where the value of an item is so self-evident as to defy contradiction, specific evidence of value need not be introduced. See Jackson v. State, 413 So.2d 112, 114 (Fla. 2d DCA 1982). Here, however, we cannot agree that the cost of motor vehicle body repair is so self-evident that a jury could simply use its life experience or common sense to determine whether the $1,000 damage threshold was met. Because no evidence was introduced of the cost of repair or amount of damages for which appellant was responsible, appellant could only be found to have committed what would be the offense of criminal mischief involving damage of $200 or less, second-degree misdemeanor criminal mischief. See J.O.S. v. State, 668 So.2d 1082, 1083 (Fla. 1st DCA 1996), approved, 689 So.2d 1061 (Fla.1997).
Finally, because this court has reduced the felony criminal mischief conviction to second-degree misdemeanor criminal mischief, appellant's guidelines scoresheet must be corrected. Since appellant received a sentence at the top end of the guidelines under the prior scoresheet, appellant must be resentenced under a corrected scoresheet. See Warren v. State, 673 So.2d 987 (Fla. 1st DCA 1996).
AFFIRMED in part, REVERSED in part, and REMANDED for proceedings consistent with this opinion; conflict certified.
ALLEN AND WEBSTER, JJ., CONCUR.