BILL MEIER, JUSTICE
I. INTRODUCTION
The Texas Tort Claims Act's (TTCA) limited waiver of sovereign immunity does not extend to intentional torts. Tex. Civ. Prac. & Rem. Code Ann. § 101.057(2) (West 2011). In this interlocutory appeal from the partial denial of Appellant City of Fort Worth, Texas's jurisdictional plea, we consider whether the TTCA's intentional-tort exception applies to Appellee Mary Deal's claim that her son's death following a high-speed police pursuit and crash was proximately caused by a police officer's *369 negligent deployment of a tire-deflation device (TDD). Because, on these facts, a sufficiently close connection existed between the vehicle and Deal's son's person so that the unknown officer's use of the TDD constituted a battery, and because Deal does not otherwise allege a distinct negligence claim that does not arise out of the battery, we conclude that Deal's claim is barred by the intentional-tort exception. We will reverse and render a judgment of dismissal for the City.
II. BACKGROUND
On February 7, 2013, at around 1:30 a.m., Fort Worth police officer Thomas Shelton was parked in his patrol unit near Texas Christian University when he observed a vehicle-later determined to be driven by Jakob Lange, Deal's twenty-four-year-old son-traveling at a high rate of speed. Officer Shelton initiated a pursuit, activated his overhead lights and later his siren, and attempted to stop the vehicle, but Lange, who had performed at a local club earlier that night, continued driving. Officer Shelton's in-car video camera recorded the pursuit and shows Lange dangerously speeding through residential areas and violating numerous traffic laws. At some point during the less-than-six-minute pursuit, at least one police officer stopped on the side of the road to deploy a "Stop Stick"-a TDD that sits on the surface of the road and is designed to puncture a vehicle's tires when they contact the device's embedded steel spikes-but Lange passed by before the officer could get into position. The pursuit came to an abrupt end when Lange lost control of his vehicle and struck a tree. He was ejected from the vehicle and died the next day.
Deal sued the City for negligence, alleging in relevant part in her pro se petition that Lange's death was proximately caused by an unknown police officer who had negligently deployed a TDD.[1] Specifically, Deal alleged that upon investigation, the right front tire of Lange's vehicle had sustained damage that was consistent with the use of a TDD-(1) it contained "about 20 punctures or marks in it, evenly spaced about 3 inches apart"; (2) a responding patrol unit had also suffered a punctured tire at the scene of the crash; and (3) there was a fifty-foot-long line of "fresh gouges" in the pavement where Lange's vehicle had veered from the road, which Deal averred was caused by "the rim of the right front wheel and/or the TDD stuck around the wheel," proving "that the right front tire had been blown out well before the Honda crashed into the curb or the tree."
Deal claimed that the unknown police officer had deployed the TDD negligently-when Lange "was traveling approximately sixty miles per hour heading into a dark curve in a tree-lined road" (a "very dangerous situation in which to deploy a TDD") and "contrary to the City's training and the manufacturer's instructions" (by holding the cord in the air). According to Deal, the TDD "blew out [Lange's] right-front tire, causing his front-wheel drive vehicle to veer to the right while the tree-lined street curved left. [Lange] hit the curb and then a tree, suffering fatal injuries."
Deal also included TTCA-related allegations in her petition. She stated that the City had "waived immunity from suit under the provisions of the [TTCA] because the death of [Lange] resulted from the use or misuse of tangible personal property, in that the [TDD] that caused and/or contributed *370 to cause the death of [Lange] was the property of the City and was used by the [City] and/or its agents." She also stated that she "specifically denies and disavows any claim or allegation that the damages suffered by [her] are the result of any intentional tort. [Deal] does not claim or allege that [the City] or any agent of [the City] intentionally caused harm or damage to [Lange]."
The City answered and filed a plea to the jurisdiction, arguing that its governmental immunity was not waived for Deal's negligent supervision and negligent training claims, that Deal's negligent-deployment claim was barred by the TTCA's intentional-tort exception, and that it was entitled to derived official immunity. Considering the affidavits attached to the plea, although the City acknowledged that most of its police vehicles are equipped with a TDD (the Stop Stick), it denied that a TDD was deployed during the pursuit.[2] The City's jurisdictional evidence also included the Stop Stick's usage guidelines.[3]
Deal responded that the caselaw relied upon by the City in its plea was either inapposite or distinguishable and that she had successfully pleaded a claim within the TTCA's waiver of immunity for personal injury or death caused by the negligent use of tangible personal property. Law-enforcement expert Geoffrey P. Alpert declared in his attached affidavit that "[t]he use of spike strips in this location, at approximately 60 miles per hour[,] was unreasonable, against common police practice and a proximate cause of the crash." And accident-reconstruction expert Russell E. Darnell opined in his affidavit that Lange had "lost control of his [vehicle] due to the deployment of a TDD" and that Lange "would not have been killed on the night of February 7, 2013" had the police "not engaged in an un-authorized deployment of a [TDD]." Deal also filed a first-amended original petition, this time through counsel.
At the hearing on the City's plea, the City acknowledged that for purposes of the plea, Deal's pleadings had to be taken as true (including her allegation involving the TDD), and the City appeared to concede that by deploying a TDD, the unknown police officer had used tangible property within the meaning of the TTCA. The trial court ultimately granted the City's plea on Deal's negligent entrustment, negligent supervision, and negligent training claims, but it denied the plea insofar as the City argued that Deal's negligent-deployment claim is barred by the TTCA's intentional-tort exception.[4] The trial court also confirmed that it was basing its ruling on Deal's original petition, since she had failed to obtain leave before filing her amended petition.[5] Only the City appeals.
III. DEAL'S NEGLIGENT-DEPLOYMENT CLAIM IMPLICATES THE TTCA'S INTENTIONAL-TORT EXCEPTION
In its only issue, the City argues that the trial court erred by denying its jurisdictional *371 plea because its unknown police officer's deployment of the TDD was an intentional tort for which the City's governmental immunity has not been waived. It characterizes the act as an arrest, as intentional, or as a battery.
In addition to criticizing parts of City of Watauga v. Gordon , 434 S.W.3d 586 (Tex. 2014), Deal responds that the TDD deployment did not constitute an arrest, that the caselaw supporting the City's intentional-act argument is inapposite, and that the City failed to demonstrate how an offensive-contact battery could have occurred when the TDD merely contacted Lange's vehicle and not his person. Deal also argues that even if the TDD's deployment was an intentional tort, she nevertheless alleged a distinct negligence claim within the TTCA's waiver of immunity.
Supplementing our analysis with persuasive out-of-state and federal authorities, we (1) agree with the City that the TDD deployment was a battery and (2) disagree with Deal that she alleged a distinct negligence claim that does not arise out of the battery.
A. Standard of Review
A plea to the jurisdiction is a dilatory plea that seeks to dismiss a cause for lack of subject-matter jurisdiction. Harris Cty. v. Sykes , 136 S.W.3d 635, 638 (Tex. 2004). Immunity from suit defeats a trial court's subject-matter jurisdiction and is therefore properly asserted in a plea to the jurisdiction. See Tex. Dep't of Parks & Wildlife v. Miranda , 133 S.W.3d 217, 225-26 (Tex. 2004). We review the trial judge's ruling denying a jurisdictional plea based on governmental immunity de novo. Tex. Nat. Res. Conservation Comm'n v. IT-Davy , 74 S.W.3d 849, 855 (Tex. 2002).
A plea to the jurisdiction may challenge either the pleadings or the existence of jurisdictional facts. Miranda , 133 S.W.3d at 226-27. When the pleadings are challenged, we consider whether the pleader has alleged sufficient facts to demonstrate the court's subject-matter jurisdiction over the matter, construing the pleadings liberally in favor of the plaintiff and looking to the pleader's intent. Id. ; see City of Waco v. Kirwan , 298 S.W.3d 618, 621 (Tex. 2009). If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues that have been raised. Miranda , 133 S.W.3d at 227. If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. Id. at 228.
B. The TTCA's Intentional-Tort Exception
Governmental immunity protects political subdivisions of the State, including cities like the City, from lawsuits for money damages unless immunity has been waived. Reata Constr. Corp. v. City of Dallas , 197 S.W.3d 371, 374 (Tex. 2006). The TTCA provides a limited waiver of immunity for personal injury and death that is caused by a use of tangible personal property. Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2) (West 2011). However, the limited waiver of immunity does not apply to a claim "arising out of assault, battery, false imprisonment, or any other intentional tort." Id. § 101.057(2). Thus, "if a claim is barred by immunity, but immunity is waived under sections 101.021-.022 of the [TTCA], action is still prohibited if the claim falls within the section 101.057(2) exception." Delaney v. Univ. of Houston , 835 S.W.2d 56, 58 (Tex. 1992).
C. The Deployment of the TDD Was a Battery
Texas has recognized common law battery claims for more than a century.
*372 Tex. Dep't of Pub. Safety v. Cox Tex. Newspapers, L.P. , 343 S.W.3d 112, 116 (Tex. 2011). Whereas an assault occurs when a person is in apprehension of imminent bodily contact, "a battery is committed when an individual actually sustains a harmful or offensive contact to his or her person." City of Watauga , 434 S.W.3d at 589. As indicated by the disjunctive "or," a " 'defendant is liable not only for contacts which do actual physical harm, but also for those which are offensive and insulting.' " Id. at 590 (quoting Restatement (Second) of Torts § 18 ). Both the penal code and the Second Restatement of Torts observe these two forms of battery. Compare Tex. Penal Code Ann. § 22.01(a)(1) (West Supp. 2017) (providing that a person commits assault if the person "intentionally, knowingly, or recklessly causes bodily injury to another") with itation index="18" url="https://cite.case.law/citations/?q=Tex.%20Code%20Ann.%20%C2%A7%2022.01">id. § 22.01(a)(3) (providing that a person commits assault if the person "intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative"). See Restatement (Second) of Torts §§ 13, 18 (1965).
Like Deal, we construe the City to argue that an offensive-contact battery occurred here. To be offensive, the contact "must be one which would offend the ordinary person." Id. § 19 cmt. a (1965).
As for the contact element, there is no allegation or evidence that the TDD contacted Lange's person; the relevant averment is that the TDD contacted a part of Lange's vehicle. But "actual physical contact is not necessary to constitute a battery, so long as there is contact with clothing or an object closely identified with the body." Fisher v. Carrousel Motor Hotel, Inc. , 424 S.W.2d 627, 629 (Tex. 1967). "Unpermitted and intentional contacts with anything so connected with the body as to be customarily regarded as part of the other's person and therefore as partaking of its inviolability is actionable as an offensive contact with his person." Restatement (Second) of Torts § 18, cmt. c. The question then is whether a sufficiently close connection existed between Lange and his vehicle so that contact between the TDD and the vehicle constituted contact with Lange's person. The requisite connection existed.
We would be remiss if we did not first acknowledge Texas Department of Public Safety v. Petta , 44 S.W.3d 575 (Tex. 2001). In that case, Petta sued the Department for negligent training and supervision and Officer Rivera for assault, battery, and other claims stemming from an encounter that she had with Trooper Rivera after he stopped her for speeding. Id. at 577-78. According to Petta, after she rolled up her window, Trooper Rivera tried to open her door, yelled obscenities at her, beat her window with his nightstick, and moved his cruiser in front of her vehicle. Id. When Petta refused to exit her vehicle, Trooper Rivera allegedly aimed his handgun at her and threatened to kill her. Id. at 578. Petta fled in her vehicle, and during the pursuit that ensued, Trooper Rivera shot at Petta's tires multiple times, apparently in an attempt to stop her. Id.
After concluding that collateral estoppel barred Petta's tort claims against Trooper Rivera, the supreme court held that Petta's negligence claims against the Department were barred by the TTCA's intentional-tort exception because they arose out of her assault, battery, and false imprisonment claims:
Here, the conduct Petta complains of is the same conduct that forms the basis of her assault and battery claim against Rivera. The specific conduct-hitting the window, calling a tow truck, aiming the gun, blocking Petta in with the cruiser, and firing at Petta's tires -is clearly *373 intentional. The allegations fit squarely within section 101.057 's exclusion of claims arising out of assault, battery , and false imprisonment.
Id. (emphasis added). The supreme court did not expressly link the specific intentional conduct mentioned with the three intentional torts identified, but in light of the authorities set out herein, we think it could have meant to connect firing at Petta's tires with battery. And considering the surrounding circumstances in Petta and here, if Officer Rivera's firing at Petta's tires was a battery, then the unknown officer's deployment of a TDD in this case would be too.
We find even more persuasive several other opinions that have concluded that intentional contact with a vehicle was actionable as a battery on its driver, albeit in criminal appeals following battery convictions.
In Clark v. State , Clark was convicted of aggravated battery after he rammed his vehicle into two other vehicles, each occupied by a driver. 746 So.2d 1237, 1239 (Fla. Dist. Ct. App. 1999), approved , 783 So.2d 967 (Fla. 2001). He argued that the trial court had erred by denying his motion for acquittal because neither of the other drivers had sustained injury-one manner of committing a battery under Florida law-nor had either driver's person been touched or struck-the other manner of committing a battery. Id. (citing Fla. Stat. § 784.045(1)(a) (West, Westlaw through 2018 2d R.S.) ). Addressing the battery statute's "touch[ing]" provision, the court disagreed that the complainants' trucks could not be considered extensions of their persons. Id. at 1239-40. It observed that " 'there need not be an actual touching of the victim's person in order for a battery to occur, but only a touching of something intimately connected with the victim's body,' " and it reasoned that "whether an object is sufficiently closely connected to a person such that touching or striking the object would be a battery on that person will depend upon the circumstances of each case." Id. at 1240. Because Clark had "twice [driven] his truck into Lynn's vehicle, once spinning Lynn around and causing damage to" the vehicle, and because there was "no doubt that Lynn was more than 'jostled,' " the court concluded that there was sufficient evidence to raise a fact issue that Clark had committed battery. Id. at 1240-41.
The Florida Supreme Court later approved the lower court's opinion, agreeing that there "is sufficient connection between a vehicle and a person where there is evidence of the touching required for a battery," such as when the impact causes the vehicle (and its occupant) to spin around. Clark , 783 So.2d at 969.
One of the cases that the Florida district court of appeal cited was State v. Townsend , another aggravated-battery case in which the defendant drove his vehicle into someone else's vehicle (his wife's). 124 Idaho 881, 865 P.2d 972, 974 (1993) (op. on reh'g). Like the argument in Clark , Townsend argued that insufficient evidence supported his conviction because "his vehicle did not strike his wife directly, but only struck the vehicle which she was driving. Without direct contact with the victim, ... there can be no battery." Id. at 976. At the time, Idaho statutorily defined battery as the willful use of force or the intentional touching or striking of another person. Id. (quoting Idaho Code § 18-903 (West, Westlaw through 2nd R.S.) ). The Idaho Supreme Court clarified that the contact "need not be committed directly against the victim; it may be committed against anything intimately connected with the person of the victim." Id. And in holding that sufficient evidence supported Townsend's conviction, the court affirmed, "[W]e *374 have little difficulty in concluding that intentionally striking a car with a pickup truck, when both vehicles are being operated at 35 miles per hour, would generate whatever physical disturbance may be implicitly required by the statute." Id. at 977.
And finally, citing both Clark and Townsend , a California court of appeals recently affirmed a defendant's battery conviction for intentionally "smashing" his vehicle into the vehicle that his wife was driving. People v. Dealba , 242 Cal.App.4th 1142, 195 Cal.Rptr.3d 848, 850-51 (2015). Dealba argued that there was no evidence to support the offense's touching element. Id. at 853. The court framed the contact inquiry as follows: "Was there evidence that the indirect impact generated by a particular vehicular collision had been sufficiently forceful to establish the 'touching' element of battery?" Id. at 857. The evidence satisfied the test, showing that "in order to counteract the force generated by the colliding vehicles, [Dealba's wife] had to grip the steering wheel tighter and struggle to keep the Volkswagen from crashing into cars parked along the curb." Id. According to the appellate court, "It was this increased force on [her] hands and arms, as she was compelled to tighten her grip on the steering wheel, that constituted the 'touching' element of the battery." Id.
This cause obviously does not involve any allegation that the unknown police officer intentionally drove his vehicle into Lange's vehicle, but as the above cases confirm, the indirect-contact inquiry turns not on the nature of the object that contacts the vehicle but rather, on the nature of the contact with the vehicle, including, principally, its resulting effect on the occupant.
Here, Lange was driving at a high rate of speed on a residential street at night when, Deal alleges, the unknown officer deployed the TDD, which punctured the right-front tire of Lange's vehicle, causing Lange to crash into a tree, to be ejected from his vehicle, and to die the next day. Easily, Lange had such a close connection with his vehicle that the indirect, offensive contact between the TDD and the vehicle was sufficient to constitute contact with Lange's person. See Fisher , 424 S.W.2d at 629 ; see also Dealba , 195 Cal.Rptr.3d at 857 ; Clark , 746 So.2d at 1240-41 ; Townsend , 865 P.2d at 977. The unknown officer's alleged negligent deployment of the TDD stated a claim for battery.
D. Deal Did Not Allege a Distinct Negligence Claim
Deal additionally argues that even if her claim is based on a battery, she nevertheless alleged a distinct negligence claim that is not subject to the TTCA's intentional-tort exception. She claims that the unknown officer made negligent decisions about where, when, and how to deploy the TDD:
As to where: it was on a tree-lined street heading into a dark curve. As to when: when police rules prohibited him or her from deploying it, and when the pursued car was speeding about 60 miles per hour. As to how: in light of the Stop Stick getting wrapped around the tire, in apparent disregard of Stop Stick's instructions (such as not to hurry it, or not to hold the cord in the air).
"[E]ven if a claim is based on an intentional tort, a governmental entity may still be liable for negligence if that negligence is distinct from the intentional tort." Tex. Dep't of Criminal Justice-Cmty. Justice Assistance Div. v. Campos , 384 S.W.3d 810, 815 (Tex. 2012). But to be distinct, the negligence claim must not "aris[e] out of" an intentional tort, and therefore fall within the TTCA's intentional-tort exception. See *375 Cameron Cty. v. Ortega , 291 S.W.3d 495, 499 (Tex. App.-Corpus Christi 2009, no pet.) (holding that plaintiff could not circumvent intentional-tort exception by couching claim that arose from intentional tort as negligence). Like the "arises from" language contained in civil practice and remedies code section 101.021, the "arising out of" language contained in section 101.057(2) requires a "certain nexus" for the provision to apply-a nexus between the claim and an intentional tort. Delaney , 835 S.W.2d at 59.
We believe that the requisite nexus exists here. The unknown police officer's alleged negligent decisions about where, when, and how to deploy the TDD here were all subsumed in, and not distinct from, the commission of the battery. Compare Id. at 60 (notwithstanding that intentional tortfeasor was not governmental employee, concluding that negligence claim (failing to repair broken door lock despite repeated complaints) and breach-of-contract claim (failing to provide a secure residence) were "readily distinguishable" from intruder's sexual assault of dormitory tenant) and Young v. City of Dimmitt , 787 S.W.2d 50, 51 (Tex. 1990) (stating that petitioners' negligent employment and entrustment claims arose "out of the alleged negligence of the city employees supervising the officer, not out of the officer's intentional tort") with Cameron Cty. , 291 S.W.3d at 499 (reasoning that negligence allegations complaining about how deputy used handcuffs on plaintiff arose from battery claim). See Sabir v. Dist. of Columbia , 755 A.2d 449, 452 (D.C. 2000) ("Thus it is settled that a person cannot negligently commit an intentional tort."). Consequently, Deal's negligence claim arises out of the battery and is subject to the TTCA's intentional-tort exception. See Tex. Civ. Prac. & Rem. Code Ann. § 101.057(2). Although confident in this determination, our decision is only reinforced when we consider the matter from the perspective of a federal court applying the similarly worded intentional-tort exception to the Federal Tort Claims Act (FTCA).
The FTCA imposes liability upon the federal government "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C.A. § 1346(b)(1) (West Supp. 2016). However, similar to the TTCA's intentional-tort exception, this liability does not extend to "[a]ny claim arising out of assault, battery," or several other enumerated intentional torts. 28 U.S.C.A § 2680(h) (West 2006) (emphasis added).
The United States Supreme Court construed § 2680(h) 's "arises out of" language in Sheridan v. United States , 487 U.S. 392, 108 S.Ct. 2449, 101 L.Ed.2d 352 (1988). There, three naval corpsmen found Carr, an off-duty serviceman who had completed his shift at a naval hospital, lying face down in a drunken stupor on the floor of the hospital building. Id. at 395, 108 S.Ct. at 2452. They attempted to take him to the emergency room, but Carr broke away, revealing the barrel of a rifle that he had in his bag. Id. , 108 S.Ct. at 2452. The corpsmen fled and took no further action to subdue Carr, nor did they alert authorities about him. Id. , 108 S.Ct. at 2452. Carr subsequently fired several shots from the rifle into a vehicle, injuring one of the plaintiffs, who alleged that the Government was negligent for allowing Carr to leave the hospital with a loaded rifle. Id. , 108 S.Ct. at 2452.
Even though a battery had clearly occurred, the Supreme Court disagreed with the lower courts that the claim was barred by the FTCA's intentional-tort exception because the plaintiffs alleged that the Government (through the three naval corpsmen) had breached a duty that was "entirely *376 independent" of Carr's status as a Government employee-Maryland's "Good Samaritan" law. Id. at 401-02, 108 S.Ct. at 2455-56 ; see Leleux v. United States , 178 F.3d 750, 757 (5th Cir. 1999) (" Sheridan stands for the principle that negligence claims related to a Government employee's § 2680(h) intentional tort may proceed where the negligence arises out of an independent, antecedent duty unrelated to the employment relationship between the tortfeasor and the United States."). "[B]y voluntarily undertaking to provide care to a person who was visibly drunk and visibly armed, the Government assumed responsibility to 'perform [its] "good Samaritan" task in a careful manner,' " regardless of Carr's status as a Government employee. Sheridan , 487 U.S. at 401, 108 S.Ct. at 2455. A Michigan federal district court astutely noted why the issue turns on the alleged violation of a duty independent of the tortfeasor's employment status: "Where the federal government's negligence rests upon its failure to prevent an employee from committing an intentional tort, it is difficult to see how such a negligence claim does not 'aris[e] out of' an intentional tort within the meaning of § 2680(h)." Verran v. United States , 305 F.Supp.2d 765, 776 (E.D. Mich. 2004).
Here, Deal does not allege that the City violated any duty independent of its employment relationship with the unknown officer. Her sole negligence theory is premised upon respondeat superior. See F.F.P. Operating Partners, L.P. v. Duenez , 237 S.W.3d 680, 686 (Tex. 2007) ("[T]he doctrine of vicarious liability, or respondeat superior, makes a principal liable for the conduct of his employee or agent."). Alternatively applying Sheridan 's standard to the TTCA's intentional-tort exception, Deal's negligence claim plainly arises out of the unknown officer's battery. See, e.g. , Wise v. United States , 8 F.Supp.2d 535, 542 (E.D. Va. 1998) ("Thus, to the extent that plaintiffs attempt to hold the United States directly liable, on a respondeat superior theory, for Turner and Brown's actions, the court holds that section 2680(h) of the FTCA clearly bars the claim.").
The trial court erred by denying the City's jurisdictional challenge to Deal's negligent-deployment claim. We sustain the City's issue and need not address its other grounds for reversing the trial court's order. See Tex. R. App. P. 47.1.
IV. CONCLUSION
Having sustained the City's only issue, we reverse the trial court's order denying the City's jurisdictional plea on Deal's negligent-deployment claim and render a judgment of dismissal in favor of the City. See Miranda , 133 S.W.3d at 227 ("If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend.").

Deal initially filed a complaint in federal court. The federal district court dismissed her negligence claim without prejudice.

The affiants nevertheless opined that it would have been appropriate to use a TDD under the circumstances.

The guidelines provide in part that the device "is designed for a controlled release of air from the target vehicle's tires, usually within 20-30 seconds," but also that "under some circumstances tire deflation can increase the possibility that a driver may lose control of the vehicle and crash, resulting in SERIOUS or FATAL INJURIES ." [Emphasis in original.]

The trial court also denied the City's plea based on official immunity, but the City does not raise its official-immunity defense on appeal.

Like the trial court, we will limit our review to the allegations contained in Deal's original petition. But as Deal acknowledges, and we agree based on our review of the record, "the pertinent allegations are very similar in the two petitions."