# IN THE SUPREME COURT OF TEXAS

═══════════

No. 13-0012

═══════════

THE CITY OF WATAUGA, PETITIONER,

v.

RUSSELL GORDON, RESPONDENT

═══════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SECOND DISTRICT OF TEXAS

═══════════════════════════════════════

**Argued December 4, 2013**

JUSTICE DEVINE delivered the opinion of the Court.

The Texas Tort Claims Act waives governmental immunity for, among other things, personal injuries allegedly caused by the negligent use of property. TEX. CIV. PRAC. & REM. CODE § 101.021. The Act does not waive immunity when the claim arises out of an intentional tort, however. *Id.* § 101.057(2). The question in this interlocutory appeal is whether an arrestee's lawsuit against a city for injuries, accidentally caused by a police officer's use of handcuffs, states a battery or negligence claim. The court of appeals concluded that the underlying claim was for negligence and therefore affirmed the trial court's order, denying the city's governmental-immunity plea. 389 S.W.3d 604 (Tex. App.—Fort Worth 2013). We conclude, however, that the underlying claim is for battery. Because the city's governmental immunity has not been waived for this intentional tort, we reverse the court of appeals' judgment and dismiss the case.

## I. Background

City of Watauga police officers stopped Russell Gordon on suspicion of drunk driving and asked him to submit to a sobriety test. Gordon declined. He was then arrested without resistance. Gordon was handcuffed at the scene and again later when transported from a nearby police station to the city jail. Gordon asserts that on both occasions he informed the officers that his handcuffs were too tight but that his complaints were ignored.

Gordon subsequently sued the City for injuries to his wrists allegedly caused by the officers' negligent use of property—the handcuffs. The City responded with a plea to the jurisdiction, asserting immunity from suit under the intentional-tort exception to the Tort Claims Act's sovereign-immunity waiver. TEX. CIV. PRAC. & REM. CODE § 101.057(2). The trial court denied the City's plea. The City appealed. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8) (permitting interlocutory appeal of an order granting or denying a plea to the jurisdiction by a governmental unit). The court of appeals affirmed, concluding that Gordon's pleadings asserted a negligence claim and that the City's plea and jurisdictional evidence did not show an exception to the applicable immunity waiver. 389 S.W.3d at 607-08.

## II. Jurisdiction

Because this is an interlocutory appeal, we begin with the issue of our own jurisdiction. As a general rule, appeals may be taken only from final judgments. *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001). Exceptions to this general rule are provided by statutes that specifically authorize interlocutory appeals of particular orders. *See, e.g.,* TEX. CIV. PRAC. & REM. CODE § 51.014 (listing a number of interlocutory orders that may be appealed). Another general rule

2

provides for finality of these appeals in the courts of appeals. TEX. GOV'T CODE § 22.225(b)(3) (providing generally that petition for review is not allowed to the supreme court in an interlocutory appeal). But again, exceptions exist. One such exception provides that the supreme court is not deprived of jurisdiction to consider an interlocutory appeal when a justice dissents in the court of appeals or when the court of appeals' decision conflicts with a prior decision. *Id*. § 22.225(c).

The City here asserts conflicts jurisdiction, arguing that the decision in this case conflicts with several prior decisions that, unlike this case, apply the intentional-tort exception to bar personal-injury claims arising from a police officer's use of tangible property during an arrest. *See, e.g., Harris Cnty. v. Cabazos*, 177 S.W.3d 105 (Tex. App.–Houston [1st Dist.] 2005, no pet.) (holding immunity not waived for officer's intentional discharge of pistol); *City of Garland v. Rivera*, 146 S.W.3d 334 (Tex. App.—Dallas 2004, no pet.) (holding immunity not waived for intentional use of pepper spray, handcuffs, and police service dog); *Morgan v. City of Alvin*, 175 S.W.3d 408 (Tex. App.–Houston [1st Dist.] 2004, no pet.) (holding immunity not waived for officer's physical assault of arrestee) ; *City of Laredo v. Nuno*, 94 S.W.3d 786 (Tex. App.–San Antonio 2002, no pet.) (holding immunity not waived for intentional use of handcuffs and excessive force in arrest). A conflict in decisions is defined as an "inconsistency . . . that should be clarified to remove unnecessary uncertainty in the law and unfairness to litigants." TEX. GOV'T CODE § 22.001(e); § 22.225(e). We agree that such a conflict is presented here and turn to the issue of the City's immunity.

### III. The Underlying Claim: Negligence or Battery

The City of Watauga, as a political subdivision of the State, is protected from tort claims by governmental immunity. *Dallas Cnty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 341 (Tex. 1998). Governmental immunity[1] generally protects municipalities and other state subdivisions from suit unless the immunity has been waived by the constitution or state law. *Univ. of Tex. Med. Branch at Galveston v. York*, 871 S.W.2d 175, 177 (Tex. 1994). The Texas Tort Claims Act provides a limited waiver of this immunity and is asserted as the basis for the underlying suit here.

In pertinent part, the Tort Claims Act waives immunity for injuries caused by the negligent use of tangible property, stating:

> A governmental unit in the state is liable for . . . personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM. CODE § 101.021(2). This limited waiver does not apply to intentional torts, however. *Id*. § 101.057. Thus, to sue a governmental unit under the Act's limited waiver, a plaintiff may allege an injury caused by negligently using tangible personal property, *York*, 871 S.W.2d at 178 n.5, but to be viable, the claim cannot arise out of an intentional tort, *Tex. Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 580 (Tex. 2001).

The City maintains that its immunity has not been waived because Gordon's underlying claim arises from an intentional tort, a battery, also sometimes referred to as an assault. Texas courts have recognized private causes of action for both assault and battery for well over a century. *See*

---

[1] "Sovereign immunity protects the State, state agencies, and their officers, while governmental immunity protects subdivisions of the State, including municipalities and school districts." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 n.2 (Tex. 2008).

*Tex. Dep't of Pub. Safety v. Cox Tex. Newspapers,* L.P., 343 S.W.3d 112 , 115–116 (Tex. 2011) (citing *Sargent v. Carnes*, 84 Tex. 156, 19 S.W. 378, 378 (1892)). These two intentional torts are related, but conceptually distinct. 4 J. HADLEY EDGAR, JR, & JAMES B. SALES, TEXAS TORTS & REMEDIES § 50.01[1] at 50-3 (2013). An assault occurs when a person is in apprehension of imminent bodily contact, whereas a battery is committed when an individual actually sustains a harmful or offensive contact to his or her person. *See generally,* 1 DAN B. DOBBS, PAUL T. HAYDEN & ELLEN M. BUBLICK, THE LAW OF TORTS §§ 33-40 (2d ed. 2012) (hereafter "THE LAW OF TORTS").

Today, the Texas Penal Code combines common-law concepts of assault and battery under its definition of "assault." TEX. PEN. CODE § 22.01(a). Reliance on the criminal-assault statute has led several Texas civil courts to meld common-law concepts of assault and battery under the rubric of assault.[2] This statute provides that a person commits an assault if the person either:

(1) intentionally, knowingly, or recklessly causes bodily injury to another . . . ;

(2) intentionally or knowingly threatens another with imminent bodily injury . . . ; or

(3) intentionally or knowingly causes physical contact with another when he or she knows or should reasonably believe that the other will regard the contact as offensive or provocative.

TEX. PEN. CODE § 22.01(a).

---

[2] *See Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 801 n.4 (Tex. 2010) (noting several courts' observation that the elements of civil and criminal assault are the same); *Forbes v. Lanzl*, 9 S.W.3d 895, 900 (Tex. App.–Austin 2000, pet. denied) (noting that elements of assault are the same in both civil and criminal cases); *Hogenson v. Williams*, 542 S.W.2d 456, 458 (Tex. Civ. App.–Texarkana 1976, no writ) (same); *see also* Comm. On Pattern Jury Charges, Texas Pattern Jury Charges—General Negligence § 6.6 (State Bar of Texas 2006) (using Penal Code's definition of assault in civil cases); *but see Miller ex. rel. Miller v. HCA, Inc.*, 118 S.W.3d 758, 767 (Tex. 2003) (referring to a physician's act of operating without consent as a battery).

The statute's second alternative definition mirrors the traditional notion of common-law assault, while the first and last alternatives correspond to separate forms of common-law battery. The Second Restatement of Torts similarly identifies two forms of battery: one form that results in harmful bodily contact and another that results in offensive bodily contact. RESTATEMENT (SECOND) OF TORTS §§ 13, 18 (1965). Because its police officers did not intend any harmful bodily contact when they arrested Gordon, the City relies on the latter form of battery, maintaining that the arrest constituted an offensive bodily contact.

In *Fisher v. Carrousel Motor Hotel, Inc.*, 424 S.W.2d 627 (Tex. 1967), we recognized this type of battery. In that case, the manager of a motel restaurant snatched a plate from the hands of a black man as he stood in a buffet line, shouting that he would not be served. *Fisher*, 424 S.W.2d at 628-29. We held the manager's conduct to be actionable as a battery. *Id.* at 630. Relying on the Restatement, we noted that it was the offensive nature of the contact, not its extent, that made the contact actionable: "Personal indignity is the essence of an action for battery; and consequently the defendant is liable not only for contacts which do actual physical harm, but also for those which are offensive and insulting." *Id.* (citing RESTATEMENT (SECOND) OF TORTS § 18); *see also Waffle House*, 313 S.W.3d at 802-03 (recognizing continued viability of offensive-contact batteries).

## A. Consent

The court of appeals concluded that Gordon's pleadings[3] asserted a claim for negligence instead of battery because, as Gordon alleged, the officers did not intend to injure him and he did not resist arrest. 389 S.W.3d at 607. The court reasoned that Gordon's compliance indicated his consent to the arrest, thereby negating the contact's offensive nature. *See id.* (noting that "the officers' application of the handcuffs did not involve an offensive touching or contact of Gordon by the officers as required to constitute the intentional tort of assault or battery"). The court further suggested that Gordon's consent distinguished the case from other cases involving alleged excessive force or other offensive contact during an arrest. *Id.* at 607-08 (citing cases).

The City, of course, disagrees with the court's analysis, arguing that Gordon's compliance was not consent in any relevant legal sense. The City submits that Gordon did not volunteer to be arrested because he had no choice. *See, e.g.,* TEX. PEN. CODE §§ 38.03-.04 (criminalizing resisting

---

[3] The court of appeals summarizes the substance of Gordon's pleadings in the following footnote:

[O]ne evening City of Watauga police pulled him over on suspicion of driving while intoxicated; after Gordon politely refused to perform field sobriety tests, the officers told him that he would be placed under arrest and handcuffed; Gordon "consented to the arrest and allowed the officer to place the cuffs on him without any resistance"; Gordon repeatedly informed the officer that the handcuffs were too tight and were hurting him, but the officer did not check the tightness of the handcuffs. Gordon pleaded that at the police station, after he had refused to perform any additional sobriety tests, he was told that he would be handcuffed and taken to jail. Gordon again consented, and the placement of handcuffs occurred without incident. Gordon told the officers that the handcuffs were too tight and were causing him pain. Again, the officers did not check or loosen the handcuffs. Gordon pleaded a negligence claim, pleading that the officers acted negligently in their use of tangible personal property, specifically the use of handcuffs, in one or all of the following ways: by failing to properly use the handcuffs as designed; by failing to follow proper policies and procedures as to the proper use of handcuffs; and by applying the handcuffs on him in a manner that was too tight on his wrists.

389 S.W.3d at 605 n.1.

7

arrest). Moreover, the City argues that Gordon clearly did not consent to have the handcuffs applied too tightly, else he would have no claim under any liability theory.

Several amici[4] support the City's position, arguing that using restraints on an arrestee is undoubtedly offensive to a reasonable sense of personal dignity and technically a battery in the absence of privilege. Amici point to the Restatement, which recognizes that an arrest "usually involves conduct which, unless privileged, is an 'assault' or 'battery'" but that where the privilege exists "it justifies not only the confinement but also any conduct which is reasonably necessary to effect the arrest." RESTATEMENT (SECOND) OF TORTS § 118, cmt. b (1965).

We agree that Gordon's compliance during the arrest was not legal consent to what otherwise would have been a battery. Preeminent tort authorities have noted that "[a]s to false imprisonment or battery, it is clear that yielding to . . . the assertion of legal authority . . . must be treated as no consent at all, but submission against the plaintiff's will . . ." W. KEETON, D. DOBBS, R. KEETON, & D. OWEN, PROSSER & KEETON ON THE LAW OF TORTS, 121 (5th ed. 1984). Even were we to agree that Gordon's compliance constituted consent to reasonable force, his pleadings indicate that the police exceeded that consent by applying the cuffs with excessive force.

Consent to contact "negatives the wrongful element of the defendant's act, and prevents the existence of a tort." *Id*. at 112; *see also Smith v. Holley*, 827 S.W.2d 433, 437 n.3 (Tex. App.–San Antonio 1992, writ denied) (quoting PROSSER & KEETON). But exceeding consent makes the tortfeasor liable for the excess. *See* RESTATEMENT (SECOND) OF TORTS § 892A(4) (1965). Gordon's

---

[4] Amici include the Texas Municipal League, Texas City Attorney's Association, Texas Association of Counties, and Texas Association of Counties Risk Management Pool.

pleadings assert that he protested repeatedly that the handcuffs were too tight and causing him pain, thus plainly terminating any assumed consent. The court of appeals' reliance on Gordon's "consent" therefore fails to distinguish this case from other cases that have applied the Tort Claims Act's intentional-tort exception to arrests involving excessive-force allegations. *See, e.g., Morgan*, 175 S.W.3d at 418; *Rivera*, 146 S.W.3d at 337-38; *Nuno*, 94 S.W.3d at 789.

### B. Intentional Tort or Unintended Injury

Gordon argues that his case is different from other cases involving excessive force in that the police here did not intend to injure him. Quoting from *Reed Tool Co. v. Copelin*, Gordon further submits that the "fundamental difference" between a negligent injury and an intentional injury is the "specific intent to inflict injury." 689 S.W.2d 404, 406 (Tex. 1985). Gordon reasons that, if a specific intent to inflict injury is an intentional tort, an unintended or accidental injury must conversely result from negligence. Although the City agrees that any injury here was accidental, it does not agree that a worker's compensation case like *Reed Tool* has any relevance to the City's immunity claim.

In *Reed Tool*, an employee argued that the Texas Worker's Compensation Act should not limit his recovery because his employer intentionally caused his injury. The employee maintained that his employer exhibited that intent by willfully providing an unsafe workplace. *Id*. at 405. In holding that the employee's injury was not intentional, we reasoned that the failure to furnish a safe workplace was not the kind of actual intention to injure that robs the injury of its accidental character and thus avoids the exclusive remedy provision of the worker's compensation act. *Id*. at 406. Distinguishing intentional injuries from accidents, we observed that an employer's toleration

9

of a dangerous condition might set the stage for an accidental injury but was not a "deliberate infliction of harm comparable to an intentional left jab to the chin." *Id*. at 407 (quoting 2A A. LARSON, THE LAW OF WORKER'S COMPENSATION § 69.13 (1982). In line with that, we noted that "direct assaults by an employer on an employee" would fall within the act's intentional injury exception, elaborating further that the fundamental difference between accidental and intentional injuries was "the specific intent to inflict injury." *Id*. at 406.

We agree with the City here that the distinction drawn in *Reed Tool* between intentional and accidental injuries is not particularly helpful in distinguishing a battery from negligence. Although a specific intent to inflict injury is without question an intentional tort, and many batteries are of this type, a specific intent to injure is not an essential element of a battery.[5] As already discussed, a battery does not require a physical injury, and thus it follows that an intentional physical injury is also not required.[6] In fact, even a harmful or offensive contact that is intended to help or please the plaintiff can be actionable as a battery.[7] According to the Restatement:

> If an act is done with the intention of inflicting upon another an offensive but not a harmful bodily contact or of putting another in apprehension of either a harmful or offensive bodily contact, and such act causes a bodily contact to the other, the actor is liable to the other for a battery . . . although the act was not done with the intention of bringing about the resulting bodily harm.

---

[5] *Fisher*, 424 S.W.2d at 629-30; *see also Hall v. Sonic Drive-In of Angleton, Inc.*, 177 S.W.3d 636, 650 (Tex. App.–Houston [1st Dist.] 2005, pet. denied) (rejecting argument that an intent to injure is the only way to prevail on an assault claim).

[6] *See* W. KEETON, D. DOBBS, R. KEETON, & D. OWEN, PROSSER AND KEETON ON TORTS 36-37 (5th ed. 1984) ("The defendant may be liable although . . . honestly believing that the act would not injure the plaintiff.").

[7] *See id.* at 41-42 ("[T]he Defendant may be liable even when intending only a joke, or even a compliment, as where an unappreciated kiss is bestowed without consent or a misguided effort is made to render assistance"); *see also Gravis v. Physicians & Surgeons Hosp.*, 427 S.W.2d 310, 311 (Tex. 1968) (noting that battery action lies against physician who, with intent to cure the plaintiff, operated without plaintiff's consent).

10

RESTATEMENT (SECOND) OF TORTS § 16 (1965).

That the defendant intends "bodily contact that is 'offensive'" is enough, then. 1 THE LAW OF TORTS § 33 at 81; *accord Fisher*, 424 S.W.2d at 630. Liability in battery moreover extends to harmful bodily contacts even though only offensive contacts were intended.[8] Thus, while we agree that intentional injuries are by definition a consequence of intentional torts, we do not agree with the notion that accidental injuries are never a consequence.

## IV.  Excessive Force and the Texas Tort Claims Act

The gravamen of Gordon's complaint against the City is that its police officers used excessive force in effecting his arrest. Claims of excessive force in the context of a lawful arrest arise out of a battery rather than negligence, whether the excessive force was intended or not. *See City of San Antonio v. Dunn*, 796 S.W.2d 258, 261 (Tex. App.–San Antonio 1996, writ denied) (noting that injuries caused by excessively tight handcuffing "certainly cannot be attributed to the City as negligence"); *Cameron Cnty. v. Ortega*, 291 S.W.3d 495, 499 (Tex. App.–Corpus Christi 2009, no pet.) (allegations that deputy was negligent in his use of handcuffs and used excessive force held indistinguishable from assault as defined in the penal code). The District of Columbia Court of Appeals has explained the relationship between negligence and battery in this context:

> While it may be, as the trial court here noted, that the officers may have mistakenly believed that they needed to exert the amount of force that they did, that does not affect the intentionality of the initial action or the objective excessiveness of the force. An unwanted touching may in its inception be intentional, a battery, or accidental, possibly negligent. But once it is found to be intentional, a battery

---

[8] *See, e.g., Caudle v. Betts*, 512 So. 2d 389, 389 (La. 1987) (holding that liability in battery extends to consequences which the defendant did not intend or even reasonably foresaw); *see also* 1 THE LAW OF TORTS § 45 (discussing the concept of extended liability or transferred intent applicable in battery but not in negligence).

11

> tortfeasor is liable for the full range of consequences, intended or not, including harm and transferred liability. [citation omitted]. Therefore, where the excessive force is the product of a battery, an unwanted touching inherent in any arrest, which escalates in an unbroken manner into excessive force, the cause of action is a battery alone, with the privilege having ended at the point where excessive force began. To instruct in such circumstances on a separate and distinct tort of negligence is not only doctrinally unsound but a potential source of jury confusion.

*District of Columbia v. Chinn*, 839 A.2d 701, 707 (D.C. 2003). We agree that when an arrest, lawful in its inception, escalates into excessive-force allegations, the claim is for battery alone.

The court of appeals in this case is not the first Texas court to conclude that allegations of unintended injury during an arrest state a negligence claim. *See, e.g.*, *City of Lubbock v. Nunez*, 279 S.W.3d 739, 742-43 (Tex. App.–Amarillo 2007, pet. granted & dism'd by agr.) (concluding that the death of an uncooperative suspect caused by a police officer's repeated use of a taser was unintentional and consequently the result of negligence). But again, we agree with *Chinn* that such a conclusion is "doctrinally unsound." *Chinn*, 839 A.2d at 707. The actions of a police officer in making an arrest necessarily involve a battery, although the conduct may not be actionable because of privilege. *Love v. City of Clinton*, 37 Ohio St. 3d 98, 524 N.E.2d 166, 167 n. 3 (Ohio 1988); *cf. Fuerschbach v. Sw. Airlines Co.*, 439 F.3d 1197, 1209 (10th Cir. 2006) (applying New Mexico law to hold that use of handcuffs in a pranking incident is some evidence of contact that "offends a reasonable sense of personal dignity"). The officer is privileged to use reasonable force. *Petta*, 44 S.W.3d at 579. But a police officer's mistaken or accidental use of more force than reasonably necessary to make an arrest still "arises out of" the battery claim. *Dunn*, 796 S.W.2d at 261. "As the saying goes, there is no such thing as a negligent battery, since battery is defined to require an intentional touching without consent not a negligent one." 1 THE LAW OF TORTS § 31 at 77.

12

The Texas Tort Claims Act waives governmental immunity for certain negligent conduct, but it does not waive immunity for claims arising out of intentional torts, such as battery. TEX. CIV. PRAC. & REM. CODE § 101.057(2). Because Gordon alleges that the police used excessive force in his arrest, a claim that arises out of a battery, his pleadings do not state a claim for which governmental immunity has been waived under the Tort Claims Act. We accordingly reverse the court of appeals' judgment and render judgment dismissing the case.

_____
John P. Devine
Justice

Opinion Delivered: June 6, 2014

13