

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-19-00159-CV

———————————————————

TARRANT COUNTY, TEXAS, Appellant

V.

TONY LEE GREEN, Appellee

On Appeal from the 141st District Court
Tarrant County, Texas
Trial Court No. 141-294259-17

Before Sudderth, C.J.; Bassel and Wallach, JJ.
Memorandum Opinion by Chief Justice Sudderth

# MEMORANDUM OPINION

Appellee Tony Lee Green sued Appellant Tarrant County, Texas, alleging in his original petition that while he was in the Tarrant County Jail, Corporal James Davis, a sheriff's department employee, pointed a laser temperature gun directly at Green's left eye.[1] Green alleged that Corporal Davis had been acting in the course and scope of his county employment when he "negligent[ly] use[d]" the laser temperature gun and referenced the Texas Tort Claims Act (TTCA). *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 101.001(2), .002, .021. Green specifically "denie[d] and disavow[ed] any claim or allegation that the damages [he] suffered . . . [were] the result of any intentional tort." *See id.* § 101.057(2) (stating that the TTCA does not apply to a claim "arising out of assault, battery, false imprisonment, or any other intentional tort").

Tarrant County filed a plea to the jurisdiction in which it argued that the trial court lacked subject matter jurisdiction because—among other things—Green had pleaded an intentional tort and it is immune from suit for intentional torts. *See id.* To its plea, Tarrant County attached a portion of Green's deposition in which, when asked whether he believed that Corporal Davis had accidentally used the laser on his eye, Green replied,

> I don't think so. Again, I don't think that he intended to do me harm, but I believe that he intended to shine it at me. It was a little bit too

---

[1]Green alleged that when he saw Corporal Davis with the laser temperature gun, he jokingly said, "He's got a [T]aser, please don't [T]ase me!"

direct and he was just way too close for it to have been an absolute accident.

. . . .

So I don't -- I -- to answer your question just dead on, no, I don't think it was an accident. I believe the injury was an accident. I don't think he intended to do it, like, to harm me.

Green responded that Tarrant County's interpretation of the intentional-tort exception would "effectively eviscerate the Legislature's express waiver of sovereign immunity for the negligent use or misuse of tangible personal property" and was unjust and unreasonable outside the context of an arrest. Green asserted that although Corporal Davis's decision to point the laser at Green—a person not under arrest and already in custody—was intentional, a rational jury could conclude that his decision to point it at Green's eye was negligent. Green attached Corporal Davis's deposition to his response. In the deposition, Corporal Davis denied any interaction with Green that involved pointing the laser at him, but he admitted he could have pointed it in Green's direction.

At the hearing on Tarrant County's plea, Green argued that there was no implicit battery because no intentional contact was made and that the officer did not intend to hurt him because he did not understand that the laser was hazardous.[2]

---

[2]The trial judge indicated that he understood Green's argument, stating, "I intend to drive my car to work, and I may be negligent while I'm intending to drive here."

3

Green acknowledged that he had not brought a failure-to-train claim.[3] The trial court denied Tarrant County's plea.

In a single issue, Tarrant County brings this interlocutory appeal, arguing that the trial court erred as a matter of law by denying its plea to the jurisdiction because Corporal Davis committed an intentional tort and because Green did not allege a claim involving a condition or use of the county's tangible personal property. *See id.* § 51.014(a)(8). Green responds that to commit either an assault or a battery,[4] there must be an intentional act accompanied by an intent to create a harmful or offensive

---

[3]Corporal Davis stated in his deposition that he had never seen the temperature device's instruction manual and that his training to use the device had been by "[w]ord of mouth." When shown the manual, he acknowledged that it contained a warning that said, "Laser light, do not stare into the beam," but he said that he had been taught that the device was not dangerous and that, when he asked the medical staff if the device could damage someone's eye, he was told no. He asked the medical staff about it when he took Green to see the jail's medical staff after Green complained about his eye.

[4]Under the Penal Code, a person can commit an assault (1) by intentionally, knowingly, or recklessly causing bodily injury to another; (2) by intentionally or knowingly threatening another with imminent bodily injury; or (3) by intentionally or knowingly causing physical contact with another when he "knows or should reasonably believe that the other will regard the contact as offensive or provocative." Tex. Penal Code Ann. § 22.01(a); *see City of Fort Worth v. Chattha*, No. 02-11-00342-CV, 2012 WL 503223, at *5–6 (Tex. App.—Fort Worth Feb. 16, 2012, no pet.) (mem. op.) (stating that the court looks to the Penal Code for the elements of civil causes of action such as assault). In *City of Watauga v. Gordon*, the supreme court explained that Penal Code Section 22.01's first and third definitions correspond to separate forms of common law battery while the second definition mirrors the traditional notion of common law assault. 434 S.W.3d 586, 590 (Tex. 2014).

contact and admits that while there was an intentional act, Corporal Davis had no intent to commit a harmful or offensive contact.

A plea to the jurisdiction challenges the trial court's authority to determine an action's subject matter. *City of Westworth Vill. v. City of White Settlement*, 558 S.W.3d 232, 239 (Tex. App.—Fort Worth 2018, pet. denied). Whether a trial court has subject matter jurisdiction, whether a plaintiff has alleged facts that affirmatively demonstrate that subject matter jurisdiction, and whether undisputed evidence of jurisdictional facts establishes subject matter jurisdiction are questions of law that we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *see also Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002).

When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause, construing the pleadings liberally in the plaintiff's favor and looking to the pleader's intent. *Miranda*, 133 S.W.3d at 226. If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency, and the plaintiff should be afforded the opportunity to amend. *Id.* at 226–27.

If, however, a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to

5

resolve the jurisdictional issues raised, taking as true all evidence favorable to the nonmovant, indulging every reasonable inference, and resolving any doubts in the nonmovant's favor. *Id.* at 227–28. The burden is on the governmental unit as the movant to meet the standard of proof. *Id.* at 228 ("By requiring the state to meet the summary judgment standard of proof . . ., we protect the plaintiffs from having to 'put on their case simply to establish jurisdiction.'"). If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the factfinder. *Id.* at 227–28. However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228.

The State and its political subdivisions are generally immune from suit and liability absent a constitutional or statutory waiver of their immunity. *See Univ. of Tex. M.D. Anderson Cancer Ctr. v. McKenzie*, 578 S.W.3d 506, 512 (Tex. 2019) ("The [TTCA] waives the state's immunity for certain negligent acts by governmental employees."); *Gordon*, 434 S.W.3d at 589 ("Governmental immunity[] generally protects municipalities and other state subdivisions from suit unless the immunity has been waived by the constitution or state law."); *Univ. of Tex. Med. Branch v. York,* 871 S.W.2d 175, 177 (Tex. 1994) ("Under the doctrine of sovereign immunity, the State is not liable for the negligence of its employees absent constitutional or statutory provision for liability.").

6

Section 101.021 of the TTCA, "Governmental Liability," expressly waives a governmental unit's immunity from suit for personal injury

> proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
>
> (A) the . . . personal injury . . . arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
>
> (B) the employee would be personally liable to the claimant according to Texas law; and
>
> . . . personal injury . . . so caused by a condition or use of tangible personal . . . property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

Tex. Civ. Prac. & Rem. Code Ann. § 101.021. The TTCA's limited immunity waiver does not apply to intentional tort claims, i.e., claims that arise "out of assault, battery, false imprisonment, or any other intentional tort." *Id.* § 101.057; *Gordon*, 434 S.W.3d at 589. And a plaintiff may not expand the TTCA's limited waiver through artful pleading. *McKenzie*, 578 S.W.3d at 513.

Tarrant County refers us to *Gordon* in support of its argument that Green's claim reflects an intentional tort that falls outside of the TTCA's limited immunity waiver. In *Gordon*, the court considered handcuff-related injuries suffered by a drunk-driving suspect and determined that, although the injuries had been accidentally caused, and although the complainant alleged that the officers' use of handcuffs had been negligent and that they had not intended to injure him, the cause of action was

7

for an intentional tort (battery) rather than negligence; thus, the TTCA's limited waiver did not apply. 434 S.W.3d at 587–89, 591–92.

Gordon had argued that because the injury was accidental, it had to have been the result of negligence. *Id.* at 592. But the court reasoned that although the specific intent to inflict injury is unquestionably part of some intentional torts, a specific intent to injure is not an essential element of a battery, which does not require physical injury and which can involve a harmful or offensive contact intended to help or please the plaintiff, and it noted that accidental injuries can sometimes result from an intentional tort. *Id.* at 592–93 & n.7. The court held that in cases alleging a battery, that the defendant intends offensive contact is enough. *Id.* at 593. The court concluded that because the gravamen of Gordon's complaint was that the police had used excessive force in arresting him, that claim—in the context of a lawful arrest—arose from a battery rather than negligence, whether the excessive force was intended or not. *Id.* at 593. The court noted that "a police officer's mistaken or accidental use of more force than reasonably necessary to make an arrest still 'arises out of' the battery claim" and rendered a judgment of dismissal on the city's plea to the jurisdiction. *Id.* at 588, 594.

Green responds that *Gordon* does not apply here because nothing indicates that Corporal Davis intended a harmful or offensive contact that would establish an assault or a battery and that the evidence creates a fact issue as to jurisdiction.

The record reflects that Green alleged the negligent infliction of an injury and specifically disavowed any intentional tort in his pleadings, and in his deposition, he

stated that he did not believe that the officer had intended to harm him, although he thought that the officer had intended to shine the laser in his eye. Corporal Davis denied any such action. Green argues that his pleadings establish a negligence cause of action, not an intentional tort disguised as a negligence claim, and that viewing his pleadings liberally, nothing indicates that Corporal Davis intended a harmful or offensive contact or Green's immediate apprehension thereof. *See Gordon*, 434 S.W.3d at 589–90 (explaining that Texas civil courts have melded the common law concepts of assault and battery under assault's rubric).

While the fundamental difference between a negligent injury and an intentional injury is the specific intent to inflict injury, *Chattha*, 2012 WL 503223, at *6 (quoting *Reed Tool Co. v. Copelin,* 689 S.W.2d 404, 406 (Tex. 1985)), in *Gordon*, the court expressly stated that the distinction drawn between intentional and accidental injuries in *Reed Tool*, a workers' compensation case, was "not particularly helpful in distinguishing a battery from negligence" because the specific intent to injure is not one of battery's essential elements. 434 S.W.3d at 592. Thus, the fact that Corporal Davis did not intend to hurt Green, assuming that he pointed the laser temperature gun at Green, does not preclude the gravamen of Green's claim from setting forth an intentional tort. *See id.*

Green alleged that Corporal Davis intentionally caused a physical contact with him in response to his joke, "He's got a [T]aser, please don't tase me!" And he alleged that the physical contact (via the laser) harmed him. The gravamen of these

9

allegations constitute a common law battery claim because the contact—either offensive or provocative—was an intentional act made in response to Green's own provocative statement. *See* Tex. Penal Code Ann. §§ 6.03(a), 22.01(a)(3); *Gordon*, 434 S.W.3d at 594 (observing that there is no such thing as a negligent battery); *see also City of Fort Worth v. Deal*, 552 S.W.3d 366, 368–69 (Tex. App.—Fort Worth 2018, pet. denied) (holding that a sufficiently close connection between the deceased's person and his vehicle existed such that an unknown police officer's deployment of a tire-deflation device that caused the vehicle to crash constituted a battery). Because the gravamen of Green's complaint is an intentional tort, the limited TTCA immunity-waiver does not apply, and the trial court erred by denying Tarrant County's plea to the jurisdiction.

Accordingly, we sustain this portion of Tarrant County's sole issue and do not reach its "use" argument. *See* Tex. R. App. P. 47.1. We reverse the trial court's order denying Tarrant County's plea to the jurisdiction and render a judgment of dismissal.

/s/ Bonnie Sudderth
Bonnie Sudderth
Chief Justice

Delivered: October 24, 2019