**AFFIRMED and Opinion Filed January 12, 2022**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-21-00658-CV

**BRADLEY B. MILLER, Appellant**
**V.**
**DANIELLE DIAZ ANDF DALLAS COUNTY TEXAS, Appellees**

**On Appeal from the 116th District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-20-15614**

## MEMORANDUM OPINION

Before Justices Myers, Molberg, and Garcia
Opinion by Justice Garcia

Bradley Miller, pro se, appeals the interlocutory order granting the plea to the jurisdiction filed by appellees Judge Danielle Diaz and Dallas County. Miller raises eleven issues. In essence, the issues pertinent to this appeal argue that Judge Diaz had no judicial immunity when she signed temporary orders in Miller's divorce case minutes after he attempted to remove the case to federal court and Dallas County is vicariously liable for Judge Diaz's allegedly tortious acts. Concluding Miller's arguments are without merit, we affirm the trial court's order.

## I. BACKGROUND

This case is one of many Miller has filed against Dallas County judges, Dallas County, and others arising out of his dissatisfaction with his divorce proceeding. We focus only on those facts relevant to the disposition of this case.

Miller was the respondent in a divorce case filed in the 330th District Court (the "Divorce Case"). Judge Diaz is an associate judge of that court.

A final divorce decree was signed on April 2, 2014. After the decree was entered, Miller and his ex-wife continued to have disputes over custody, visitation, and child support.

A hearing was scheduled for June 7, 2018 in the modification and enforcement proceedings. An hour before the hearing, Miller attempted to remove the case to federal court.[1] The notice of removal was filed at 8:46 a.m. and opposing counsel was provided with a copy of that notice at 8:57 a.m., three minutes before the hearing was scheduled to begin. Judge Diaz conducted the hearing and signed temporary orders at 9:37 a.m. (the "June Orders"). Miller did not attend the hearing.

In October 2020, Miller initiated this suit against Judge Diaz, Dallas County and twelve other defendants, including his ex-wife and her attorneys, the presiding judge of the 330th court, his daughter's school and individuals who serve the school, the City of Dallas, two Dallas police officers, a Dallas businessman and an art exhibit

---

[1] This was the third time Miller attempted, without success, to remove the Divorce Case to federal court.

sponsor (relative to Miller's violation of orders from the Divorce Case), and other individuals who testified in the Divorce Case or who Miller believed were involved in a conspiracy to deprive him of access to his daughter.[2]

Notwithstanding the litany of complaints Miller lodges against the other defendants in his one hundred thirty-page petition, the allegations relevant here pertain to Judge Diaz's signing the June Orders and Miller's allegations that Dallas County is vicariously liable for Judge Diaz's allegedly tortious actions.

In June 2021, Judge Diaz and Dallas County filed the corrected plea to the jurisdiction at issue here. The plea argued that (i) judicial immunity bars Miller's claims against Judge Diaz because she was acting in her judicial capacity, (ii) Miller's claims are barred by governmental immunity, (iii) Miller's attempted removal did not deprive the court of jurisdiction as that term is defined in the context of immunity, and (iv) because Judge Diaz is entitled to immunity, Dallas County has no derivative liability. The plea was supported by an appendix including findings, recommendations, and orders pertaining to Miller's three failed removal attempts and an order granting another judge's plea to the jurisdiction in the underlying case. Miller responded to the plea but adduced no evidence to support his response.

---

[2] Miller has initiated at least sixteen proceedings, all of which arise from what transpired in the Divorce Case. These proceedings include suits in state and federal court and appeals to this court, the Fifth Circuit Court of Appeals, the Texas Supreme Court and the United States Supreme Court.

The trial court conducted a hearing and subsequently signed an order granting the plea to the jurisdiction. Miller now appeals from that order.

## II.  ANALYSIS

Miller raises eleven issues, but only five of the eleven pertain to issues before the court. Accordingly, our analysis is confined to Miller's issues one, two, three, five, and eleven, all of which pertain to whether the trial court erred in granting the plea to the jurisdiction.[3]

## A.    Are Miller's Claims Barred by Judicial and Governmental Immunity?

Miller argues the trial court erred by granting the plea to the jurisdiction because Judge Diaz and Dallas County are not immune from suit. We disagree.

A party may challenge a trial court's subject matter jurisdiction by filing a plea to the jurisdiction. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). We review a trial court's ruling on a plea to the jurisdiction de novo. *Univ. of Tex. M.D. Anderson Cancer Ctr. v. McKenzie*, 578 S.W.3d 506, 512 (Tex.

---

[3] Appellants issues as stated are: (1) Whether state court jurisdiction halts during the pendency of a federal removal; (2) Whether any state court proceedings conducted during the pendency of a federal removal are void; (3) Whether Diaz acted without jurisdiction and thus has no judicial immunity from suit and damages; (4) Whether res judicata and collateral estoppel do not apply because the issue of jurisdiction regarding Diaz's temporary orders has never been adjudicated; (5) Whether the family district court has no continuing jurisdiction because the temporary orders were fraudulent and not issued as part of a legitimate case; (6) Whether appellant has standing to bring suit in the trial court; (7) Whether the trial court defendants' tortious acts fall within the statute of limitations; (8) Whether appellant's constitutional claims are valid; (9) Whether appellees' arguments regarding jurisdiction are intentionally misleading and therefore represent a fraud upon the court and a violation of the Fourteenth Amendment due process guarantee; (10) Whether appellees' attempts to blame appellant for their own criminal and abusive actions violate the Fourteenth Amendment due process guarantee; and (11) Whether the trial court erred in granting the plea to the jurisdiction. We reject issues 4, 6,7,8, 9, and 10 as not properly before this court in this appeal of an interlocutory order granting a plea to the jurisdiction because the issues do not form the basis of the court's order, and because issues 8, 9, and 10 go to the merits of Miller's case.

2019) (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)). Ordinarily a plea to the jurisdiction challenges the plaintiff's pleadings, asserting that the alleged facts do not affirmatively demonstrate the court's jurisdiction. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012). We "construe the plaintiff's pleadings liberally, taking all factual assertions as true, and look to the plaintiff's intent." *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 150 (Tex. 2012).

A plea to the jurisdiction may also challenge the existence of jurisdictional facts, and when it does, the parties may present evidence. *Id*. "In those situations, a trial court's review of a plea to the jurisdiction mirrors that of a traditional summary judgment motion." *Mission Consol. Indep. Sch. Dist.*, 372 S.W.3d at 635. In performing our review, we consider only the pleadings and evidence pertinent to the jurisdictional inquiry. *Cty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002).

The jurisdictional question in this case relates to judicial and governmental immunity; both defeat a court's subject matter jurisdiction. *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003) (governmental immunity); *Dallas Cnty. v. Halsey*, 87 S.W.3d 552, 554 (Tex. 2002) (judicial immunity). We begin with judicial immunity.

Judges acting in their official capacity have immunity from liability and suit for judicial acts performed within the scope of their jurisdiction. *Twilligear v. Carrell,* 148 S.W. 3d 502, 504 (Tex. App. — Houston [14th Dist.] 2004, pet. denied)

(*citing Dallas Cnty v. Halsey,* 87 S.W.3d. 552, 554 (Tex. 2002). Associate family court judges, like Judge Diaz, are afforded the same judicial immunity as district judges by statute. TEX. FAM. CODE ANN. § 201.017.

Judicial immunity is overcome only for actions that are: (1) non-judicial, i.e. not taken in the judge's official capacity; or (2) taken in complete absence of all jurisdiction. *Twilligear,* 148 S.W. 3d at 504. These factors are broadly construed in favor of immunity. *Bradt v. West,* 892 S.W.2d 56, 67 (Tex. App.—Houston [1st Dist.] 1994, writ denied).

Factors to determine whether a judge acts in a judicial capacity include: (1) the act complained of is one normally performed by a judge; (2) the act occurred in the courtroom or an appropriate adjunct, such as the judge's chambers; (3) the controversy centered around a case pending before the judge; and (4) the act arose out of a visit to the judge in his/her official capacity. *Id*. Immunity may exist even if all factors are not met, and the weight to be given to each of the factors varies depending upon the facts of the case. *Id*.

Miller's petition alleges that Judge Diaz issued "fraudulent temporary orders" and signed the June Orders without jurisdiction. He also broadly alleges that judges violated various provisions of the penal code and federal statutes by signing orders in the Divorce Case and intentionally caused him to suffer emotional distress by assisting his ex-wife and her attorneys in fraudulent family court lawsuits and participating in a conspiracy with the other defendants. He further alleges that Judge

Diaz violated his Fourth Amendment rights when another judge issued a capias warrant following his child support enforcement trial, and that Judge Diaz and others were "pretending to be Judges, while acting as individuals and indeed criminals while producing fraudulent documents." On appeal, however, Miller complains only about Judge Diaz's entry of the June Orders.

Notwithstanding Miller's characterizations, there is no question that Judge Diaz was acting in her official capacity when she signed the June Orders. The proper analysis focuses on whether the challenged action is a "function normally performed by a judge" and the complaining party "dealt with the judge in his judicial capacity." *Mireless v. Waco*, 502 U.S. 9, 11–12 (1991). As applicable here, temporary orders are signed by judges, the June Orders were signed in the courtroom or an appropriate adjunct, in connection with a hearing conducted by Judge Diaz in the Divorce Case in which Miller was an active participant. There is nothing in the record to suggest that Judge Diaz acted in any capacity other than performing her official duties.

Next, we consider whether Miller's jurisdictional gamesmanship triggered an exception to judicial immunity because Judge Diaz's actions were taken in complete absence of jurisdiction. To this end, Miller argues that his attempted removal of the case to federal court deprived Judge Diaz of jurisdiction. This attempt, as with prior attempts to disrupt the proceedings, was unsuccessful. This court has previously expressed displeasure with Miller's attempts to manipulate and obstruct the judicial process, holding:

> We decline to validate Father's failure to support his child, excuse his own contempt, or justify his attempts to interfere with the trial court's jurisdiction by continually removing the case to federal court despite having been informed by the federal courts in no uncertain terms that federal jurisdiction was lacking.

*In Re V.I.P.M.,* No. 05-19-00197-CV, 2020 WL 1472210, at \*5 (Tex. App.—Dallas Mar. 26, 2020, pet. denied) (mem. op.), *cert. denied, Miller v. Dunn*, No. 20-0695, 2021 WL 1240959 (U.S. Apr. 5, 2021).[4]

We also reject Miller's argument here because it conflates the meaning of jurisdiction for purposes of determining a court's authority to issue a valid judgment or order with the meaning of jurisdiction in the context of judicial immunity. The meanings are distinct, and the distinction, albeit nuanced, is significant. *See Adams v. McIhaney*, 764 F.2d 294, 298 (5th Cir. 1985) ("jurisdiction" has a different connotation in judicial immunity context); *see also Bradt*, 892 S.W.2d at 67.

When Miller removed the case to federal court, the state court was divested of jurisdiction until the case was remanded. *See* 28 U.S.C. § 1446(d) (A notice of removal served on all adverse parties and filed with the clerk of the state court "shall effect the removal and the State court shall proceed no further unless and until the

---

[4] In the prior appeal, this court also noted:

We also conclude that jurisdiction rested in the trial court when it conducted each of the proceedings listed above and entered the Judgment. In an apparent effort to interrupt the trial court's jurisdiction, [Miller] has removed this case to federal court three times. On November 8, 2016, one day after [Miller] removed the case, [the federal judge] s*ua sponte* remanded the case to the trial court because no federal subject matter jurisdiction existed . . . [Miller] again removed the case on April 17, 2018, following proceedings related to Mother's motion to modify visitation. On May 16, 2018, [the federal judge] . . . remanded the case to the trial court for the same reason. Undeterred, [Miller] removed the case on June 7, 2018 and again, on June 29, 2018, [the federal judge] entered an order and judgment remanding the case. *Id.*

case is remanded."); *Gonzalez v. Guilbot*, 315 S.W.3d 533, 538 (Tex. 2010) (jurisdiction re-vests in state court, following federal order of remand, upon mailing or hand delivery of remand order to state court). In this context, jurisdiction pertains to whether the June Orders were void. *See e.g.*, *Hilton v. NBC Bank-Heights*, No. 01-96-01366-CV, 1998 WL 135105, at *2-3 (Tex. App.—Houston [1st Dist.] Mar. 19, 1998, pet. denied) (order entered by a state court after the case is removed is void for want of jurisdiction). But the validity of the June Orders is not at issue here.[5] Rather, the question is whether there was "jurisdiction" as that term is used in the context of immunity.

"Jurisdiction" in the context of judicial immunity does not concern whether an order is valid or void. *See West v. Robinson*, 486 S.W.3d 669, 674 (Tex. App.—Amarillo 2016, pet. denied) (in the context of judicial immunity "jurisdiction" has a particular meaning). Instead, the inquiry is whether the judge ordinarily has jurisdiction to sign an order of the type that was signed. *See Bradt*, 892 S.W.2d at 68 (signing show cause order—even a void one—was an act within district judge's jurisdiction as the term is meant for immunity purposes); *Partain v. Gabert*, No. 13-21-00037-CV, 2021 WL 3775670, at *3 (Tex. App.—Corpus Christi-Edinberg, Aug. 26, 2021, pet. filed) (that judgment later vacated has no bearing on the

---

[5] Moreover, to the extent that a final judgment or decree has been issued, any issue concerning the temporary orders is moot. *See F.A.B. v. Dep't of Family and Protective Servs.*, No. 01–10–00930–CV, 2012 WL 5310024, at *6 (Tex. App.—Houston [1st Dist.] Oct. 25, 2012, no pet.) (mem. op.).

jurisdictional analysis for immunity purposes). Thus, for immunity purposes, the focus is not on whether the judge's specific act was improper or valid. *See James v. Underwood,* 438 S.W.3d 704, 712 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *see also Henzel v. Gerstein*, 608 F.2d 654, 658 (5th Cir 1979) (absence of jurisdiction exception to immunity refers to when a judge acts in a purely private and nonjudicial capacity). As the Fifth Circuit has explained, "the proper inquiry is not whether the judge actually had jurisdiction or even whether the court exceeded its jurisdictional authority, but whether the challenged actions were actually taken outside the scope of the judge's power." *Davis v. Bayless*, 70 F.3d 367, 373 (5th Cir. 1995) (quoting *Stump v. Sparkman*, 435 U.S. 349, 357 (1978)).

Jurisdiction in the context of judicial immunity is broadly construed to effectuate the policies of guaranteeing a disinterested and independent judicial decision-making process. *Bradt,* 892 S.W.2d at 68. Accordingly, "[e]ven the commission of 'grave procedural errors' does not deprive a judge of jurisdiction as the term is meant in absolute judicial immunity analyses." *West v. Robinson,* 486 S.W.3d 669, 674 (Tex. App.—Amarillo 2016, pet. denied).

Applying these principles to the instant case, the question becomes whether a family court judge is generally empowered to issue orders in a divorce case. There is no question that family court judges have such authority, and Miller does not argue otherwise. In other words, the 330th court had exclusive, continuing jurisdiction over the Divorce Case and Judge Diaz had the authority to enter orders relating to that

case. Despite the temporary loss of jurisdiction to enter valid orders (which was promptly restored upon remand) caused by Miller's intentional effort to interrupt the process, the signing of temporary orders in connection with modification and enforcement proceedings are exactly the type of orders a family court judge is generally empowered to enter. Signing the June Orders was not undertaken in a personal or non-judicial capacity. Therefore, when Judge Diaz signed the June Orders, there was sufficient jurisdiction for purposes of immunity. The "absence of jurisdiction" exception to absolute judicial immunity has not been met.

In addition, the claims against Judge Diaz and Dallas County are also barred by governmental immunity. Miller asserted several tort claims against Dallas County as well as Section 1983 claims for alleged violations of his constitutional rights. All these claims are premised on Miller's contention that Dallas County failed to train and properly supervise judges.

A plaintiff bringing a claim against a governmental unit bears the burden of establishing either that its claim falls within the Texas Tort Claims Act ("TTCA") or some other waiver of sovereign immunity. *See Mount Pleasant Ind. School Dist. v. Lindburg*, 766 S.W.2d 208, 211 (Tex. 1989). The TTCA waives immunity from suit only for limited types of claims and damages. TEX. CIV. PRAC. & REM. CODE § 101.021(1)-(2); *Miranda,*133 S.W.2d at 225. There is no waiver of immunity for claims arising from the acts or omissions of a court or member of the court acting in her judicial capacity. *See* TEX. CIV. PRAC. & REM. CODE § 101.021(1). Indeed, the

statute expressly preserves judicial immunity. *See* TEX. CIV. PRAC. & REM. CODE §101.053.

There is also no waiver of immunity for the fraud and negligent supervision claims Miller asserts against Dallas County. *See LTTS v. Charter School, Inc. v. Palasota,* 362 S.W.3d 202, 209 (Tex. App.—Dallas 2012, no pet.) (fraud); TEX. CIV. PRAC. & REM. CODE §101.021(1) (no waiver for negligent supervision). Judge Diaz is entitled to the same governmental immunity afforded to her employer, Dallas County. *See* TEX. CIV. PRAC. & REM. CODE § 101.106(f); *City of Wautauga v. Gordon,* 434 S.W.3d 586, 594 (Tex. 2014).

Although Miller insists that he is also suing Judge Diaz in her individual, rather than official capacity, we look to "the course of the proceedings" to determine the capacity in which the official has been sued. *Terrell v. Sisk*, 111 S.W.3d 274, 281 (Tex. App.—Texarkana 2003, no pet.). Here, the substance of Miller's petition reflects that he sued Judge Diaz in connection with the performance of her official duties as an Associate Judge. Consequently, there is no basis for individual liability.

## B.  Are Miller's Derivative Claims against Dallas County Viable?

Miller has not asserted any discreet claims against Dallas County, other than those which allegedly emanate from the judicial rulings of Judge Diaz. Specifically, Miller alleged that he was suing Dallas County in its "individual, vicarious, and respondeat superior capacities." Respondeat superior "declares the act of the servant to be the act of the master and that which excuses or justifies the one will in like

manner excuse and justify the other." *Joe v. Two Thirty-Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004) (citing *Cameron Compress Co. v. Kubecka*, 283 S.W. 285, 287 (Tex. App.—Austin 1926, writ ref'd). We have concluded that Miller's suit against Judge Diaz is barred by governmental and judicial immunity. Accordingly, it follows that Dallas County cannot be derivatively liable. *See id*.

Miller's first, second, third, fifth, and eleventh issues are resolved against him, and we need not reach his remaining issues. *See* TEX. R. APP. P. 47.1. The trial court's order is affirmed.

/Dennise Garcia/
DENNISE GARCIA
JUSTICE

210658F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

### JUDGMENT

BRADLEY B. MILLER, Appellant

No. 05-21-00658-CV        V.

DANIELLE DIAZ AND DALLAS
COUNTY, Appellees

On Appeal from the 116th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-20-15614.
Opinion delivered by Justice Garcia.
Justices Myers and Molberg
participating.

In accordance with this Court's opinion of this date, the trial court's order is
**AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered January 12, 2022.